**Not For Publication in West's Federal Reporter**
**Citation Limited Pursuant to 1st Cir. Loc. R. 32.3**

# United States Court of Appeals
## For the First Circuit

No. 04-1945

HARJIADI HENDRA JAYA,

Petitioner,

v.

ALBERTO GONZALES, ATTORNEY GENERAL,*

Respondent.

ON PETITION FOR REVIEW OF AN ORDER
OF THE BOARD OF IMMIGRATION APPEALS

Before

Boudin, Chief Judge,
Selya and Howard, Circuit Judges.

William A. Hahn and Hahn & Matkov on brief for petitioner.
Peter D. Keisler, Assistant Attorney General, Jeffrey J. Bernstein, Senior Litigation Counsel, and Carolyn M. Piccotti, Trial Attorney, on brief for respondent.

September 8, 2005

_____

*Alberto Gonzales was sworn in as United States Attorney General on February 3, 2005. We have substituted him for John Ashcroft, previous holder of that office, as the respondent. See Fed. R. App. P. 43(c)92).

**Per Curiam**. Harjiadi Hendra Jaya, a citizen of Indonesia of Chinese ethnicity, seeks judicial review of a decision of an Immigration Judge ("IJ"), adopted by the Board of Immigration Appeals ("BIA"), which dismissed his asylum application as untimely and denied his application for withholding of removal on the merits. For the reasons discussed below, we deny the petition.

A. Dismissal of Asylum Application

An alien who has applied for asylum must "demonstrate[] by clear and convincing evidence that the application has been filed within 1 year after the date of the alien's arrival in the United States."[1] 8 U.S.C. § 1158(a)(2)(B). Otherwise, the alien must "demonstrate[] to the satisfaction of the Attorney General either [1] the existence of changed circumstances which materially affect the applicant's eligibility for asylum or [2] extraordinary circumstances relating to the delay in filing an application." Id. § 1158(a)(2)(D).

Here, it is undisputed that Jaya filed his asylum application more than one year after his arrival in the United States. And the IJ and the BIA both found that Jaya's proffered reasons for delay did not fall into either of these two exceptions. This court is powerless to review that determination, Sharari v. Gonzales, 407 F.3d 467, 473 (1st Cir. 2005) (quoting 8 U.S.C. §

---

[1]No such time limit applies to applications for withholding of removal or relief under the Convention Against Torture.

1158(a)(3) and collecting cases).

B.  Denial of Withholding of Removal

Under the Immigration and Nationality Act, an otherwise deportable alien may avoid removal by showing that the alien's life or freedom would, more likely than not, be threatened in the destination country because of the alien's race, religion, nationality, membership in a particular social group, or political opinion.[2]  8 U.S.C. § 1231(b)(3)(A); INS v. Stevic, 467 U.S. 407, 429-30 (1984).  An alien can make this showing in one of two ways. If the alien demonstrates past persecution on one of the protected grounds, a rebuttable presumption arises that the alien's life or freedom would be threatened in the future on that basis, and the burden shifts to the INS[3] to prove by a preponderance of the evidence that the alien's life or freedom would not be threatened in the future, either because of improved country conditions or because the alien could reasonably avoid the threat by relocating to another part of the country.  8 C.F.R. § 208.16(b)(1); see Silva v. Ashcroft, 394 F.3d 1, 4 (1st Cir. 2005).  If the alien cannot

---

[2]This is a more stringent standard than that applicable to asylum claims.  INS v. Cardoza-Fonseca, 480 U.S. 421, 449 (1987).

[3]In March 2003, the relevant functions of the INS were transferred into the Department of Homeland Security and reorganized as the Bureau of Immigration and Customs Enforcement ("BICE").  6 U.S.C. § 291(a), as amended by the Homeland Security Act, Pub. L. 107-296, § 471, 116 Stat. 2135, 2005.  See United States v. Watson, 386 F.3d 304, 306 n.1 (1st Cir. 2004).  Any references to INS after the effective date of the Homeland Security Act should be understood as references to BICE.

show past persecution, then the burden remains on the alien to show that it is more likely than not that the alien's life or freedom would be threatened in the future. 8 C.F.R. § 208.16(b)(2); see Silva, 394 F.3d at 4.

Where, as here, the BIA adopts the reasoning of the IJ, we review the decision of the IJ. Albathani v. INS, 318 F.3d 365, 373 (1st Cir. 2003). We review the IJ's factual findings under the deferential substantial evidence test, under which the IJ's determination must stand "unless any reasonable adjudicator would be compelled to conclude to the contrary." 8 U.S.C. § 1252(b)(4)(B); see Settenda v. Ashcroft, 377 F.3d 89, 93 (1st Cir. 2004). In applying the substantial evidence standard, we review the IJ's decision based on the entire record, not merely the evidence that supports the IJ's conclusions. Gailius v. INS, 147 F.3d 34, 44 (1st Cir. 1998). We review the IJ's legal conclusions de novo, affording some deference to her interpretation of the applicable statutes. INS v. Aguirre-Aguirre, 526 U.S. 415, 425 (1999).

Here, the IJ did not clearly decide whether Jaya had been persecuted in the past on account of a protected ground: his Chinese ethnicity. Although the IJ stated that it "does not appear that [Jaya] w[as] particularly targeted on account of race" (emphasis added), she went on to say that "even if I find that [he] was targeted because of his ethnicity and/or race . . ., [he]

-4-

still has not been able to meet the burden [of showing] . . . that it is more likely than not that his life or freedom would be threatened on account of that ground or grounds."  Similarly, without considering past persecution, the BIA "agree[d] that [Jaya] failed to meet his burden of establishing that it is more likely than not that he will be persecuted . . . upon his return to Indonesia."

To the extent that the IJ and BIA continued to place the burden on Jaya, without first determining whether or not he had proven past persecution on account of a protected factor, they erred.  Cf. Hernandez-Barrera v. Ashcroft, 373 F.3d 9, 22 (1st Cir. 2004) (identifying such error in the asylum context).  However, any such error was harmless because, even assuming that past persecution was established and the presumption of future threats to Jaya's life or freedom was therefore triggered, any such presumption was overcome by evidence of changed circumstances.  See Yatskin v. INS, 255 F.3d 5, 9 (1st Cir. 2005).

In concluding that Jaya's life and liberty would not likely be threatened if he returned to Indonesia, the IJ found that Jaya continued to live in Indonesia with his parents for two more years after the May 1998 riots, on which his claim of past persecution is primarily based, and that his parents have continued to live there without incident.  Those facts are supported by substantial evidence in the record.  The 2002 State Department

Report of Human Rights Practices contained in the administrative record further supports the IJ's conclusion of no future threat to Jaya's life or liberty on account of his Chinese ethnicity. That report makes no mention of recent violence against ethnic Chinese, much less establishes a pattern or practice of such persecution, as Jaya argues. Although the report describes discrimination against people of Chinese descent, discrimination, standing alone, does not constitute persecution. Sharari, 407 F.3d at 475. Thus, even with the presumption of future persecution, the evidence in the record plainly demonstrates, by a preponderance of the evidence, that conditions in Indonesia have so changed since 1998 that Jaya's life or liberty would not likely be threatened on account of his Chinese ethnicity if he were forced to return.[4] See 8 C.F.R. § 208.16(b)(1).

Accordingly, we deny the petition. However, in so doing, we remind the IJ and BIA of their responsibility to make precise justifications for their decisions under the applicable legal standards. See Yatskin, 225 F.3d at 10.

The petition for judicial review is denied.

---

[4]Jaya has asked us to take judicial notice that the 1998 riots targeted the ethnic Chinese. However, that purported fact concerns only past persecution, which we are assuming here. Therefore, we need not decide whether that is a fact or whether the purported fact is judicially noticeable.

-6-