Andre WIJAYA, Petitioner,

v.

Alberto R. GONZALES, United States Attorney General, Respondent.

Nos. 06–4481–ag, A97–149–944.

United States Court of Appeals, Second Circuit.

April 6, 2007.

**36**

H. Raymond Fasano, Madeo & Fasano, New York, NY, for Petitioner.

R. Alexander Acosta, United States Attorney, Southern District of Florida; Anne R. Schultz, Chief, Appellate Division; Lisa A. Hirsch, Laura Thomas Rivero, Assistant United States Attorneys, Miami, FL, for Respondent.

PRESENT: Hon. ROGER J. MINER, Hon. REENA RAGGI and Hon. RICHARD C. WESLEY, Circuit Judges.

### SUMMARY ORDER

Petitioner Andre Wijaya, a native and citizen of Indonesia, seeks review of an August 31, 2006 order of the BIA affirming the March 8, 2005 decision of Immigration Judge ("IJ") William F. Jankun denying Wijaya's applications for asylum, withholding of removal, and relief under the Convention Against Torture ("CAT"). *In re Andre Wijaya*, No. A97 149 944 (B.I.A. August 31, 2006), *aff'g* No. A97 149 944 (Immig. Ct. N.Y. City March 8, 2005). We assume the parties' familiarity with the underlying facts and procedural history in this case.

As a preliminary matter, petitioner waived his asylum claim, because he failed to challenge the IJ's finding that he was ineligible for asylum when he failed to file his application within one year of his arrival in the United States. *See Yueqing Zhang v. Gonzales*, 426 F.3d 540, 546 n. 7 (2d Cir.2005). Similarly, Wijaya waived his CAT claim because he fails to raise any arguments with regard to its denial by the IJ. Accordingly, the petition for review is denied as to these two claims. Nonetheless, we proceed to consider Wijaya's challenge to the agency's denial of his application for withholding of removal.

When the BIA affirms the IJ's decision in all respects but one, this Court reviews the IJ's decision as modified by the BIA decision, i.e., "minus the single argument for denying relief that was rejected by the BIA." *Xue Hong Yang v. U.S. Dep't of Justice*, 426 F.3d 520, 522 (2d Cir.2005). Here, the BIA adopted and affirmed the IJ's decision, but agreed with Wijaya that the IJ should not have held him to Western standards of doctrinal knowledge about the Christian religion in finding him not credible. Thus, we construe the BIA's decision as having declined to adopt the IJ's adverse credibility determination. This Court reviews the agency's factual findings, including adverse credibility determinations, under the substantial evidence standard, treating them as "conclusive unless any reasonable adjudicator would be compelled to conclude to the contrary." 8 U.S.C. § 1252(b)(4)(B); *see, e.g., Zhou Yun Zhang v. INS*, 386 F.3d 66, 73 & n. 7 (2d Cir.2004). However, we will vacate and remand for new findings if the agency's reasoning or its fact-finding process was sufficiently flawed. *Cao He Lin v. U.S. Dep't of Justice*, 428 F.3d 391, 406 (2d Cir.2005); *Tian–Yong Chen v. INS*, 359 F.3d 121, 129 (2d Cir.2004); *see also Xiao Ji Chen v. U.S. Dep't of Justice*, 471 F.3d 315, 339–40 (2d Cir.2006).

■ Substantial evidence supports the BIA's and IJ's denial of Wijaya's withholding of removal claim. With regard to past persecution, Wijaya testified that, as he was returning from a Christmas mass in 1999, five native Indonesians stopped him, demanded money, and called him derogatory names relating to his ethnicity. When they discovered that he did not have any money, they hit him in his left eye, causing an injury which required two stitches. In his written application, Wijaya also described being bullied at school because he was Chinese and a Christian, and reported that his family had to pay "security money" to native Indonesians in order to run their store without harm. The IJ reasonably found that, even assuming that the incidents occurred due to Wijaya's ethnicity and religion, they did not amount to persecution. *See Matter of Acosta*, 19 I. & N. Dec. 211, 216, 222 (B.I.A.1985); *Ivanishvili v. U.S. Dep't of Justice*, 433 F.3d 332, 341 (2d Cir.2006). Furthermore, there is no indication that the IJ did not consider the cumulative effect of these events. *See Poradisova v. Gonzales*, 420 F.3d 70, 79–80 (2d Cir.2005).

■ Similarly, substantial evidence supports the BIA's and IJ's determinations that Wijaya failed to establish a clear probability that he would be persecuted if returned to Indonesia. Wijaya testified that his mother and sister continued to pay "security money" to native Indonesians, and that obtaining government-issued documents was difficult. However, he also stated that his mother and sister continued to reside in Indonesia, operate a family store, and attend church in the same town where Wijaya had lived. As such, the IJ reasonably found that Wijaya did not demonstrate eligibility for withholding of removal. *See Melgar de Torres v. Reno*, 191 F.3d 307, 313 (2d Cir.1999); *see also In re A–E–M–*, 21 I. & N. Dec. 1157, 1159–60 (B.I.A.1998).

■ Further, the record supports the agency's determination that country conditions in Indonesia, and any "overt discrimination" due to race or religion, did not establish a "pattern and practice" of the persecution of ethnic Chinese Christians. Contrary to Wijaya's argument that the IJ ignored his background materials, the IJ made several observations regarding the 2002 and 2004 State Department reports and specifically noted their indication that the instances of attacks on churches was "much less frequent" than in previous years. *See Xiao Ji Chen*, 471 F.3d at 336, n. 17.

**38**

Beyond the IJ's observations, the reports indicate that ethnic Chinese Indonesians comprise the largest nonindigenous minority group in that country and that the Indonesian government recognizes Protestantism and Catholicism as two of the country's five major faiths. Additionally, while the State Department reports indicate that instances of discrimination and harassment occurred against ethnic Chinese, the Indonesian government officially promoted racial and ethnic tolerance, and instances of discrimination and harassment of ethnic Chinese Indonesians declined compared with previous years. In light of this record evidence, Wijaya did not establish that there is a pattern or practice of persecution in Indonesia as a whole against ethnic Chinese Christians. As such, denial of withholding of removal is supported by substantial evidence.[1]

For the foregoing reasons, the petition for review is DENIED. Having completed our review, any stay of removal that the Court previously granted in this petition is VACATED, and any pending motion for a stay of removal in this petition is DISMISSED as moot. Any pending request for oral argument in this petition is DENIED in accordance with Federal Rule of Appellate Procedure 34(a)(2), and Second Circuit Local Rule 34(d)(1).

---

**1.** Although Wijaya urges us to follow the Ninth Circuit in *Sael v. Ashcroft,* 386 F.3d 922, 925 (9th Cir.2004), we decline to do so. *Id.* (holding that an asylum applicant may demonstrate a well-founded fear of future persecution by proving that he is a member of a "disfavored group," and that the threat of persecution need not be as individualized when the threat to the general group is more serious and widespread). Even if we were inclined to follow the Ninth Circuit, Wijaya's argument that he is a member of a "disfavored group," the ethnic Chinese Christians, fails. Wijaya failed to demonstrate a sufficient risk of persecution, given that the *Sael* standard arose in the context of an asylum application. In contrast, Wijaya was required to satisfy the clear probability standard, and as discussed above, the background materials support the BIA's and IJ's finding that he did not demonstrate eligibility for withholding of removal.