# United States Court of Appeals
## For the First Circuit

No. 06-2306

WAN CHIEN KHO,

Petitioner,

v.

PETER D. KEISLER,
Acting Attorney General of the United States,

Respondent.

PETITION FOR REVIEW OF AN ORDER OF
THE BOARD OF IMMIGRATION APPEALS

Before

Boudin, Chief Judge,
Lynch, Circuit Judge,
and Schwarzer,[*] District Judge.

William A. Hahn on brief for petitioner.
Jason Xavier Hamilton, Attorney, Office of Immigration Litigation, Peter D. Keisler, Acting Attorney General, and James A. Hunolt, Senior Litigation Counsel, Office of Immigration Litigation, on brief for respondent.

October 16, 2007

[*]  Of the Northern District of California, sitting by designation.

**LYNCH**, <u>Circuit Judge</u>.  Wan Chien Kho petitions for review from the denial of his application for withholding of removal.  His claims were based on his experience as an ethnic Chinese Christian in Indonesia, including his testimony about four incidents of discrimination and harassment.

The Board of Immigration Appeals ("BIA") held that the incidents Kho described did not rise to the level of persecution and that Kho had not shown that the incidents were due to government action, government-supported action, or the government's unwillingness or inability to control private conduct.  The BIA held he had not met his burden to establish past persecution or a clear probability of future persecution on account of his race or religious faith.

On petition for review, Kho makes two categories of arguments.  The BIA, he argues, erred as a matter of law when, having found Kho did not establish a "pattern or practice" of persecution against Chinese and/or Christians in Indonesia, 8 C.F.R. § 208.16(b)(2)(i), it did not apply a "disfavored group" analysis as crafted by panels in the Ninth Circuit.  He supplements this with an argument that since the Immigration Judge ("IJ") made no credibility findings, this court must deem him to be credible. The argument appears to be that if both of these rules are applied, a court would be compelled to find Kho was entitled to withholding of removal.  We reject as contrary to law both the "disfavored

group" doctrine and the presumed credibility doctrine on petition for review.

Kho then makes more conventional arguments: that the BIA did not properly assess the country condition reports and that substantial evidence did not support the BIA's conclusions.

We reject his arguments and deny the petition for review.

I.

We recite only so much as is necessary of Kho's evidence and the reasons the BIA rejected his claim. Kho, who was born in Indonesia in 1943, entered the United States on a tourist visa on April 28, 2001. In April of 2003, Kho applied for asylum and for withholding of removal. He later added a claim for relief under the Convention Against Torture ("CAT").[1]

An IJ heard Kho's testimony on April 19, 2005. Kho testified to having experienced anti-Chinese and anti-Christian discrimination in Indonesia. School officials unsuccessfully tried to block his registration to public elementary school; he eventually obtained a high school education. In 1992, shortly

---

[1] The IJ found that Kho had not filed a timely petition for asylum and presented no exceptional circumstances to warrant excusing his failure to comply with the one-year limitation period. 8 U.S.C. § 1158(a)(2)(B). The BIA affirmed that finding. We are without jurisdiction to review the asylum claim. Id. § 1158(a)(3); Awad v. Gonzales, 463 F.3d 73, 76 (1st Cir. 2006).
Kho abandoned his CAT claim during his agency appeal, so it too is not before us. 8 U.S.C. § 1252(d)(1); see also Nikijuluw v. Gonzales, 427 F.3d 115, 120 n.3 (1st Cir. 2005).

after converting to Christianity, Kho was heckled by fellow riders on a public bus for carrying a Bible.  In 1996, a group of men that Kho identified as Muslim robbed him on a side street in Jakarta; Kho believes they targeted him because of his ethnicity.

In May 1998, violent anti-Chinese rioting took place in Jakarta.  A mob targeted a largely Chinese-owned shopping center where Kho operated an electronics store.  Rioters broke shop windows and looted goods from Kho's store; one looter hit Kho in the face.  While fleeing the scene, Kho fell and hurt his hip.  A local clinic gave him antibiotics and a painkiller, then released him within ten minutes.  That 1998 episode was the last time Kho personally experienced threats or violence due to anti-Chinese or anti-Christian sentiments in Indonesia.

During the 1998 riots, a church Kho attended was destroyed when rioters set fire to it.  In 1999, a second church Kho attended was burned down during a violent confrontation between local Muslim residents and a group of Ambonese men guarding an amusement center located next to the church.

The IJ denied Kho's application in an oral decision delivered on April 25, 2005.  After dismissing Kho's asylum claim as time-barred, the IJ addressed the withholding claim.  The IJ found that Kho had not shown it was more likely than not or clearly probable that Kho "would be subjected to persecution on account of either his Christian faith or his Chinese ethnicity" upon his

return to Indonesia. The IJ pointed out that Kho lived in Indonesia from 1998 to 2001 without incident, and that he did not mention anything about fears for his safety to the United States consul when applying for his visa.

The BIA affirmed the IJ's decision by per curiam order on August 10, 2006. The BIA adopted the IJ's factual findings, adding that consideration of the second church burning, which the IJ did not mention, would not change the outcome of Kho's case.

The BIA held that Kho did not suffer past persecution because Kho's experiences of harassment did not rise to the level of persecution, and that Kho had not established a connection between his maltreatment and action or inaction by the Indonesian government.

In addition, the BIA held that Kho had not shown a "pattern or practice of government sponsored persecution of male Chinese Christians in Indonesia." The BIA noted that the U.S. State Department country reports cited by Kho described a trend of increasing tolerance of ethnic Chinese Indonesians in recent years. Those same reports, the Board acknowledged, referred to "sectarian violence due to political and economic tensions between Christians and Muslims," but also indicated that such violence occurred in "certain eastern provinces of Indonesia" removed from the central portion of the archipelago where Jakarta -- Kho's residence -- is located. As a result, Kho "failed to establish past persecution or

a clear probability of future persecution on account of his race or religious faith."

Kho timely petitioned to this court for review of the BIA's decision.[2]

## II.

We review the BIA's decision in addition to those portions of the IJ's decision adopted by the Board. Chahid Hayek v. Gonzales, 445 F.3d 501, 506 (1st Cir. 2006). Our review is deferential, as the BIA's determinations "must be upheld if supported by reasonable, substantial, and probative evidence on the record considered as a whole." INS v. Elias-Zacarias, 502 U.S. 478, 481 (1992) (internal quotation omitted). The agency's findings of fact "are conclusive unless any reasonable adjudicator would be compelled to conclude to the contrary." 8 U.S.C. § 1252(b)(4)(B). We review legal issues de novo, granting appropriate deference to the agency's interpretation of the statutes they are charged with enforcing. Albathani v. INS, 318 F.3d 365, 372 (1st Cir. 2003).

An asylum applicant may not be removed to his home country if his "life or freedom would be threatened in that country because of [his] race, religion, nationality, membership in a particular social group, or political opinion." 8 U.S.C. §

---

[2]     Pursuant to Fed. R. App. P. 43(c)(2), Acting Attorney General Peter D. Keisler is substituted for former Attorney General Alberto R. Gonzales as respondent.

1231(b)(3)(A). It is the applicant's burden to establish his eligibility for withholding of removal by demonstrating it is "more likely than not" that he would suffer persecution on account of his race or religion upon returning to his home country. 8 C.F.R. § 208.16(b)(2). An applicant for withholding may, however, create a rebuttable presumption that his life or liberty would be threatened upon return to his home country by proving that he suffered past persecution there. 8 C.F.R. § 208.16(b)(1). The statute has not defined persecution, Manzoor v. U.S. Dept. of Justice, 254 F.3d 342, 346 (1st Cir. 2001), but the BIA has filled in the regulatory gap.

Proving a future threat to life or freedom generally requires individualized evidence that the applicant will be "singled out" for persecution upon return to his home country. 8 C.F.R. § 208.16(b)(2); Pieterson v. Ashcroft, 364 F.3d 38, 43 (1st Cir. 2004); see also Guzman v. INS, 327 F.3d 11, 15-16 (1st Cir. 2003). The agency has, by regulation, altered the individualized showing requirement under one set of circumstances. For the relief of withholding of removal, the regulations state that

> the asylum officer or immigration judge shall not require the applicant to provide evidence that he or she would be singled out individually for [future] persecution if:
> (i) The applicant establishes that in that country there is a pattern or practice of persecution of a group of persons similarly situated to the applicant on account of race, religion, nationality, membership in a

> particular social group, or political opinion; and
>
> (ii) The applicant establishes his or her own inclusion in and identification with such group of persons such that it is more likely than not that his or her life or freedom would be threatened upon return to that country.

8 C.F.R. § 208.16(b)(2) (emphasis added).[3]

The BIA supportably found there was no such "pattern or practice" here and thus required Kho to produce evidence he would be singled out individually for persecution. This court has held that in order to establish a pattern or practice, an applicant must present evidence of "systematic persecution" of a group. Mequenine v. INS, 139 F.3d 25, 28 (1st Cir. 1998). In addition, an alien in removal proceedings must prove that persecutors target the group specifically on account of one of the five statutory grounds. Pieterson, 364 F.3d at 44. That a group suffers due to violent civil conflict or "general insecurity" in the home country does not suffice to establish a pattern or practice. Mequenine, 139 F.3d at 28; see also Pieterson, 364 F.3d at 44. We have repeatedly affirmed the BIA's determinations, made on the evidence submitted in various cases, that there is no ongoing pattern or practice of persecution against ethnic Chinese or Christians in Indonesia. See, e.g., Sipayung v. Gonzales, 491 F.3d 18, 21 (1st Cir. 2007); Wijaya v. Gonzales, 201 Fed. Appx. 791, 795 (1st Cir. 2006) (per

---

[3]    There is a similar "pattern or practice" standard for establishing eligibility for asylum.  8 C.F.R. § 208.13(b)(2).

curiam); <u>Teja</u> v. <u>Gonzales</u>, 196 Fed. Appx. 4, 7 (1st Cir. 2006) (per curiam); <u>Jaya</u> v. <u>Gonzales</u>, 169 Fed. Appx. 596, 598 (1st Cir. 2005) (per curiam). The record does not provide compelling evidence that the BIA erred in finding no pattern or practice of persecution in Kho's case.

A.        <u>Claims of Legal Error</u>

        1.        <u>"Disfavored Group" Analysis</u>

        Kho's argument is that the agency erred as a matter of law by failing to apply the Ninth Circuit's "disfavored group" analysis. <u>See, e.g.</u>, <u>Sael</u> v. <u>Ashcroft</u>, 386 F.3d 922, 925 (9th Cir. 2004); <u>Singh</u> v. <u>INS</u>, 94 F.3d 1353, 1359 (9th Cir. 1996); <u>Kotasz</u> v. <u>INS</u>, 31 F.3d 847, 853-54 (9th Cir. 1994). That court has crafted a judicially created alternative to the statutory and regulatory scheme. <u>Sael</u> describes its "disfavored group" analysis as an alternative to establishing a "pattern or practice of persecution." 386 F.3d at 925.

        Under the Ninth Circuit's "disfavored group" rule, asylum applicants who have not shown a pattern or practice of persecution under section 208.16(b)(2) but have shown membership in a group that is disfavored are subject to a lower burden of showing an individualized risk of threats to their lives and freedom. <u>Sael</u>, 386 F.3d at 925. A group may be deemed "disfavored" on the basis of evidence of mistreatment that is less pervasive and less severe than that required to establish a pattern or practice of

persecution.  Kotasz, 31 F.3d at 853.  The required amount of individualized evidence of persecution is, in that court's view, lower provided the individual shows membership in a group that is disfavored.  Hoxha v. Ashcroft, 319 F.3d 1179, 1182-83 (9th Cir. 2003).

The regulations establish a threshold for relieving the need for an individualized showing; the disfavored group analysis creates a different threshold, and we reject it.  The regulations already contemplate the effect of group membership on an individual's circumstances by enumerating the five statutory categories of withholding eligibility.  8 U.S.C. § 1101(a)(42)(A); 8 C.F.R. § 208.16(b).  Beyond that, the regulations do not require the agency to credit automatically discrimination experienced by a group toward an individual's case in removal proceedings.  We will not impose such a requirement on the agency.

While Congress has delegated the authority to the Attorney General and the Secretary of Homeland Security to establish regulations in this area, see 8 U.S.C. § 1103, it has made no such delegation to the courts.  The disfavored group analysis works a subtle alteration of the usual standards of review.  We are bound by the standards Congress sets.  We note that in evaluating each claim on its facts, it may be that evidence short of a pattern or practice will enhance an individualized

showing of likelihood of a future threat to an applicant's life or freedom.   That is a different matter.

In rejecting the "disfavored group" standard, we join other circuit courts that have rejected the use of a lower standard for individualized fear absent a pattern or practice of persecution and rejected the establishment of a disfavored group category.  <u>See</u> <u>Kaharudin</u> v. <u>Gonzales</u>, ___ F.3d ___, 2007 WL 2457932, at *5 (7th Cir. Aug. 31, 2007); <u>Lie</u> v. <u>Ashcroft</u>, 396 F.3d 530, 538 n.4 (3d Cir. 2005); <u>see</u> <u>also</u> <u>Wijaya</u> v. <u>Gonzales</u>, 227 Fed. Appx. 35, 38 n.1 (2d Cir. 2007) (summary order); <u>Firmansjah</u> v. <u>Gonzales</u>, 424 F.3d 598, 607 n.6 (7th Cir. 2005).  <u>But</u> <u>see</u> <u>Chen</u> v. <u>INS</u>, 195 F.3d 198, 203-04 (4th Cir. 1999).

### 2.    Presumption of Credibility

Kho supplements his "disfavored group" approach with an argument that because the IJ did not make an explicit finding concerning Kho's credibility, his testimony "must be accepted as true" by this court.   Kho bases this proposed rule as well on a series of Ninth Circuit cases.[4]   <u>See,</u> <u>e.g.,</u> <u>Hartooni</u> v. <u>INS</u>, 21 F.3d 336, 342 (9th Cir. 1994) ("Absent an explicit finding that a specific statement by the petitioner is not credible we are

---

[4]    Kho also cites to some Third Circuit cases which on close reading appear to stand only for the unremarkable proposition that in reviewing whether claims amount to persecution, a court may assume arguendo that the factual basis on which the claim is made is credible, or the court may remand for further factfinding by the agency.   <u>See</u> <u>Kayembe</u> v. <u>Ashcroft</u>, 334 F.3d 231, 237-38 (3d Cir. 2003); <u>Lukwago</u> v. <u>Ashcroft</u>, 329 F.3d 157, 164 (3d Cir. 2003).

-11-

required to accept her testimony as true."); Artiga Turcios v. INS, 829 F.2d 720, 723 (9th Cir. 1987); Canjura-Flores v. INS, 784 F.2d 885, 888-89 (9th Cir. 1985).

We have already rejected the proposition that aliens are entitled to a presumption of credibility on review in this court if there is no express credibility determination made by an IJ. See, e.g., Zeru v. Gonzales, ___ F.3d ___, 2007 WL 2725974, at *13 (1st Cir. Sept. 19, 2007). There may be a variety of reasons why such a finding is not relevant to the ultimate disposition of the case and may be pretermitted. Further, such a presumption would confuse the roles of the court and the agency. The court reviews agency proceedings but does not act as a finder of fact itself. Hence, it makes no sense to talk about presumptions of credibility which the courts of appeals must apply. Our standard of review of administrative factfinding is defined in 8 U.S.C. § 1252(b)(4). If, in the absence of a credibility finding by the IJ, a reviewing court determines that such a finding is necessary for effective review of the case, it may remand to the agency for further factfinding. See, e.g., Castañeda-Castillo v. Gonzales, 488 F.3d 17, 24-25 (1st Cir. 2007) (en banc); El Moraghy v. Ashcroft, 331 F.3d 195, 204-05 (1st Cir. 2003). A reviewing court is not bound, however, to accept a petitioner's statements as fact whenever an IJ simply has not made an express adverse credibility determination.

The REAL ID Act also provides no support for Kho's argument. In the REAL ID Act of 2005, Congress stated that for purposes of determining asylum and withholding claims, "[t]here is no presumption of credibility [in proceedings before an IJ;] however, if no adverse credibility determination is explicitly made, the applicant or witness shall have a rebuttable presumption of credibility on appeal." REAL ID Act of 2005, Pub. L. 109-13, Div. B §§ 101(a)(3), (c), 119 Stat. 231, 303-04 (codified at 8 U.S.C. §§ 1158(b)(1)(B)(iii) & 1231(b)(3)(C)).[5] It is apparent that this "rebuttable presumption" applies to appeals from immigration courts to the BIA. Compare 8 U.S.C. § 1158(b)(1)(B)(iii) (referring to "rebuttable presumption . . . on appeal"), and id. § 1158(d)(5)(iii)-(iv) (referring to "administrative appeal"), and 8 C.F.R. § 1003.38 (describing procedure for "appeals" to BIA from IJ decision), with 8 U.S.C. § 1158(a)(3) (referring to jurisdictional limitation on "judicial review" in courts of appeals), and id. § 1252 (controlling "[j]udicial review of orders of removal" in courts of appeals). There is no language in the statute directing the reviewing courts of appeals to apply any such presumption.

The REAL ID Act in fact displays Congress's awareness of the distinction between the differing standards to be applied

---

[5]    These terms of the REAL ID Act literally do not apply to Kho's application for relief from removal, which was filed before the effective date of the provision. See REAL ID Act § 101(h)(2).

during administrative appeals and in petitions for review in the courts of appeals.  A separate provision of the Act modifies 8 U.S.C. § 1252(b)(4) such that courts reviewing a final order of removal cannot reverse an agency determination concerning the availability of corroborating evidence unless "a reasonable trier of fact is compelled to conclude that such corroborating evidence is unavailable."  REAL ID Act § 101(e).  Congress chose to modify, through explicit language and specific placement within the statutory scheme, one standard for judicial review of agency decisions.  Congress did not similarly modify the scope and standard of judicial review concerning petitioners' credibility.

### 3.    Agency Consideration of Past Persecution

In his last charge of legal error, Kho argues that his case must be remanded because the IJ failed to make an explicit finding regarding past persecution.[6]  Under certain circumstances, the agency's failure to address the issue of past persecution could result in depriving an asylum applicant of the "benefit of the regulatory presumption of fear of persecution based on prior events."  El Moraghy, 331 F.3d at 205; see also Un v. Gonzales, 415 F.3d 205, 207 (1st Cir. 2005).  In El Moraghy, the BIA summarily

---

[6]    The IJ did not make an explicit finding whether Kho had suffered "past persecution" in Indonesia.  However, from the IJ's recitation of the facts of Kho's case, including his difficulty enrolling in school, the incidents of harassment in 1992, 1996, and 1998, and the destruction of Kho's church in 1998, the IJ implied that Kho had not established past persecution.

-14-

affirmed an IJ's denial of asylum even though the IJ did not make any findings regarding past persecution and in the face of significant evidence in the record that the petitioner may have experienced persecution. Id. at 198-202. The complete failure of the agency to address the issue necessitated remand for further development of the record. Id. at 205.

Kho's argument fails on its face. Here, the BIA explicitly addressed the issue of past persecution and has provided an adequate basis for this court to review the agency's decision. Cf. Sulaiman v. Gonzales, 429 F.3d 347, 350 (1st Cir. 2005) (holding that El Moraghy did not erect per se rule requiring IJs to make explicit holdings as to every factor relevant to deciding a case).

B.       Conventional Claims of Error

In addition to his charges of legal error, Kho argues that the BIA erred in failing to find that his experiences in Indonesia amounted to persecution. Kho also claims that the Board misread U.S. State Department country conditions reports. Substantial evidence in the record supports the BIA's finding of no past persecution and its reading of the country conditions reports.

Establishing persecution requires evidence of experiences surpassing "unpleasantness, harassment, and even basic suffering." Nelson v. INS, 232 F.3d 258, 263 (1st Cir. 2000); see also Nikijuluw, 427 F.3d at 120. "Persecution," within the context of

-15-

the immigration statutes, "does not include all treatment that our society regards as unfair, unjust, or even unlawful or unconstitutional." Sharari v. Gonzales, 407 F.3d 467, 474 (1st Cir. 2005) (quoting Fatin v. INS, 12 F.3d 1233, 1240 (3d Cir. 1993) (internal quotation mark omitted)). Kho based his withholding claim on his experience of the May 1998 rioting and the fact that two churches he attended were burned as collateral damage of mob violence. Kho supplements these events with one instance of discrimination from his childhood, a verbal insult received on a bus in 1992, and a non-violent mugging that occurred in 1996. By the time Kho left Indonesia in 2001, ostensibly for a vacation in the United States, he had not encountered anti-Christian or anti-Chinese harassment in Indonesia for three years. The BIA reasonably concluded that these isolated incidents did not amount to persecution.

The BIA also reasoned that Kho failed to establish that any of the incidents supporting his withholding claim were the result of government action or inaction. See Nikijuluw, 427 F.3d at 121 ("[A]n applicant qualifies for asylum only when he suffers persecution that is the direct result of government action, government-supported action, or government's unwillingness or inability to control private conduct."); see also Harutyunyan v. Gonzales, 421 F.3d 64, 68 (1st Cir. 2005) ("[P]ersecution always implies some connection to government action or inaction."). Kho

-16-

attributed all of his adult misfortunes to the actions of private citizens. There was no evidence that the police or other officials failed to protect him because of his ethnicity or religion.[7] Neither he nor his family members have ever been detained, interrogated, or otherwise harassed by the government. There is no evidence in this record to compel a finding that the Indonesian government allowed Kho to suffer persecution.

Finally, Kho contends that the BIA mischaracterized the country reports to "leave[] the impression that interreligious tensions and violence are limited to eastern Indonesia." The contents of the country reports Kho cites do not compel us to disturb the agency's findings of fact. As the BIA pointed out, the reports describe recurring violence between Christians and Muslims, but indicate that such violence is largely confined to islands separate from and eastward of Java, the central island on which Jakarta is located. In any event, and as the BIA recognized, the reports describe government-led efforts to ease interreligious tensions in those regions. The only religious violence in Jakarta mentioned by the reports consists of isolated attacks on churches

---

[7]     The U.S. State Department's 2004 Country Report on Human Rights Practices in Indonesia, the most recent contained in the record, mentions that "some ethnic Chinese citizens complained that the Government had not done enough to prosecute those responsible for the 1998 violence against them and their businesses." The same report, however, observes that the Indonesian government "officially promotes racial and ethnic tolerance," and that instances of anti-Chinese harassment and discrimination have declined in recent years.

carried out by "local residents" and "local mobs."  The reports, like Kho's individual evidence, fail to establish a link between the church attacks and government complicity or inaction.  In fact, one report that Kho cites describes police efforts to repel an attack on a church in Jakarta.  The country reports substantially support the BIA's findings.

We deny the petition for review.