# United States Court of Appeals
## For the First Circuit

No. 08-2502

SENLY SUGIARTO, JEMMY KOROMPIS, and JEISY VANYA KOROMPIS,

Petitioners,

v.

ERIC H. HOLDER, JR.,
ATTORNEY GENERAL OF THE UNITED STATES,

Respondent.

ON PETITION FOR REVIEW OF AN ORDER OF
THE BOARD OF IMMIGRATION APPEALS

Before

Torruella, Selya, and Dyk,[*]
Circuit Judges.

Armin A. Skalmowski, on brief for petitioners.
Julia J. Tyler, Trial Attorney, Office of Immigration Litigation, Civil Division, Tony West, Assistant Attorney General, Civil Division, and Barry J. Pettinato, Assistant Director, on brief for respondent.

November 10, 2009

---

[*] Of the Federal Circuit, sitting by designation.

**TORRUELLA**, **Circuit Judge**.  Petitioner, Senly Sugiarto, a practicing Christian of Indonesian nationality, seeks review of a decision by the Board of Immigration Appeals ("BIA") affirming the denial by the Immigration Judge ("IJ") of her applications for asylum, withholding of removal under § 241(b)(3) of the Immigration and Nationality Act ("INA"), and relief under the Convention Against Torture ("CAT").  Sugiarto advances no argument on appeal with respect to her withholding of removal or CAT claims, and as a result, these claims are waived.  See United States v. Zannino, 895 F.2d 1, 17 (1st Cir. 1990).  Sugiarto does argue that the BIA's denial of her asylum claim, which was based on past persecution and a well-founded fear of future persecution on account of her Christian religion, was not supported by substantial evidence. After careful consideration, finding the BIA's decision adequately supported, we deny the instant petition for review.

## I.  Background

### A.  Facts

Petitioner, Sugiarto, is a native and citizen of Indonesia, as is her husband, Jemmy Korompis, and their 10-year-old daughter, Jeisy.[1]  Sugiarto, was raised as a Protestant Christian in Tinoor, Manado, where she was a member of the local church and the treasurer of the church's women's group.  She reports that the

---

[1]  Sugiarto's husband and daughter were derivative applicants on her asylum petition, and, thus, also petitioners here.

demographics of Manado have shifted in recent years: while the majority used to be Christian, 99% of residents are now Muslim. Sugiarto asserted that she had problems in Indonesia on account of her identity as a Christian, and attributed the following incidents to her religious status.

First, Sugiarto describes an incident that occurred on September 15, 2003 while she was employed as the treasurer of a company called PI Pelni. Sugiarto was traveling with a security guard and a driver to a bank to pick up money for her company. At the bank, Sugiarto withdrew $99,000, which she held in her lap while returning to the office. While en route to her office, two men on a motorcycle blocked the road and broke the back window of the car, attempting to force open the back door near where Sugiarto was sitting. Although the men were unable to steal the money, Sugiarto's arms were cut from the broken glass, causing her to seek medical treatment at the hospital. The petitioner asserts that these men were members of a Muslim terrorist group because that was the kind of behavior these groups engaged in. Although Sugiarto had a current U.S. visitor's visa when this incident occurred, she decided to remain in Indonesia because she "had a good job."

Second, Sugiarto recounts an incident that took place on December 16, 2004. On that day Sugiarto and her family were forced to rush out of a mall in Manado when a bomb threat warning was issued. She reports that it was very difficult to breathe amidst

the fleeing crowds. Neither Sugiarto nor her husband or daughter required medical treatment after the incident. Sugiarto did not know specifically who caused the bomb threat, but reasoned that, because Manado is 99% Muslim and this event took place shortly before Christmas, those responsible were likely Muslim.

Sugiarto reported that she felt threatened as a Christian minority living in Manado due to both of these events and also because of bombings of houses, churches and various public places that were taking place in her surrounding area. She explained that these attacks often targeted church leaders and others with special duties in the church. Her fear of religious violence sometimes prevented her from attending church. Sugiarto also explained that her daughter, Jeisy, who was born with a leg condition that causes her to limp, suffered ridicule and harassment by her classmates in Indonesia because of her condition.

Sugiarto and Jeisy arrived in the United States on January 16, 2005 on a visitor's visa. Sugiarto's husband, Korompis, arrived in June of that year, also on a visitor's visa. The petitioner explains that her daughter has felt more comfortable with herself since coming to the United States. Doctors in both Indonesia and the United States have indicated that Jeisy can undergo surgery once her bones develop further, which will enable her to walk normally. Since arriving in the United States, petitioner's family has joined and regularly attended services at

-4-

the Naturia Presbyterian Church in Rochester, New Hampshire, where, in March 2006, Sugiarto was elected deacon. The record contains evidence documenting her active participation in the church.

Sugiarto reported that she could not go back to Indonesia out of fear of religious violence. She explained that since her departure from Indonesia, two of her siblings have also left Indonesia and moved to Korea out of fear of religious persecution. Some of her family members who remain in Indonesia no longer attend church because they are afraid. She has submitted, on the record, country reports and articles, including U.S. State Department Religious Freedom Reports, documenting inter-religious violence in Indonesia and acts of terrorism against Christians by extremist groups.

### B. Procedural History

Petitioner and her family remained in the United States without legal status after the expiration of their visitor visas. On January 3, 2006, Sugiarto filed a timely Form I-589 application for asylum, accompanied by applications for withholding of removal, protection under the CAT, and voluntary departure. Sugiarto listed Korompis and Jeisy as beneficiaries on her application. The Department of Homeland Security ("DHS") placed the petitioner and her family in removal proceedings on February 21, 2006. Petitioner conceded removability.

On May 18, 2007, the IJ held a hearing on the merits of Sugiarto's application. In an oral decision issued that day, the IJ found that petitioner testified credibly but that her testimony as to the attempted robbery and the bomb threat in Indonesia failed to establish harm sufficiently severe as to rise to the level of "past persecution." Moreover, the IJ found that nothing in the record established a nexus between these incidents and petitioner's status as a Christian. The IJ further found that petitioner failed to show a well-founded fear of future persecution in that petitioner has not shown that she and her family were specifically singled out on account of their religion, nor that there is a "pattern or practice" of persecution against Christians in Indonesia. The IJ thus denied the petitioner's applications for asylum, withholding, and CAT relief, but granted voluntary departure to Sugiarto and Jeisy.[2]

Sugiarto timely appealed to the BIA, which, in an order issued October 20, 2008, affirmed the IJ's reasoning and decision, and dismissed the appeal. This petition for review followed.

## II. Discussion

### A. Standard of Review

This court has appellate jurisdiction over petitions for judicial review from the BIA under 8 U.S.C. § 1252. "Review of legal rulings is de novo but is deferential as to findings of fact

_____

[2] Korompis was ordered removed to Indonesia.

-6-

and the determination as to whether the facts support a claim of persecution." Jorgji v. Mukasey, 514 F.3d 53, 57 (1st Cir. 2008). We review fact-based determinations under a "substantial evidence" standard, which requires that we must affirm provided that the BIA's decision is "supported by reasonable, substantial, and probative evidence on the record considered as a whole." Bocova v. Gonzáles, 412 F.3d 257, 262 (1st Cir. 2005) (quoting INS v. Elías-Zacarías, 502 U.S. 478, 481 (1992)); see also 8 U.S.C. § 1252 (b)(4)(B). Unless the record compels a contrary conclusion, evidence in the record supporting a conclusion contrary to that reached by the BIA is not enough to upset the agency's determination. See Sompotan v. Mukasey, 533 F.3d 63, 68 (1st Cir. 2008) (quoting López de Hincapié v. Gonzáles, 494 F.3d 213, 218 (1st Cir. 2007)). In other words, we must uphold the BIA's determination unless the record "points unerringly in the opposite direction." Hincapié, 494 F.3d at 220 (quoting Laurent v. Ashcroft, 359 F.3d 59, 69 (1st Cir. 2004)).

"Usually, this court confines its review to the BIA's order that is being challenged by the petitioner." Lumataw v. Holder, ___ F.3d ___, 2009 WL 2871884, at *4 (1st Cir. 2009) (internal quotation marks omitted). "However, when as here, the BIA adopts the decision of the IJ, and provides some analysis of its own, the Court reviews both decisions." Id.

**B. Applicable Law**

"To establish eligibility for asylum, an alien must prove either past persecution, which gives rise to an inference of future persecution, or establish a well founded fear of future persecution on account of her race, religion, nationality, membership in a social group, or political opinion." Lumataw, 2009 WL 2871884, at *3 (internal quotation marks omitted); see also 8 U.S.C. §§ 1101(a)(42)(A), 1158(b)(1)(B)(i); 8 C.F.R. § 1208.13(b).

If an applicant establishes past persecution, there is a presumption of a well-founded fear of future persecution, and the burden shifts to the Government to rebut this presumption. 8 C.F.R. § 1208.13(b)(1); see also Jorgji, 514 F.3d at 57. But even if the applicant cannot establish past persecution, she can nevertheless establish eligibility for asylum based on a "well-founded fear of future persecution" based on a protected ground. 8 C.F.R. § 1208.13(b). An applicant has a "well-founded fear of persecution" in her country if she can establish that her fear is both (1) subjectively genuine and (2) objectively reasonable, meaning that a reasonable person in the applicant's circumstances would fear persecution. Castillo-Díaz v. Holder, 562 F.3d 23, 26 (1st Cir. 2009); see also 8 C.F.R. § 1208.13(b)(2). The regulations further provide that:

> [i]n evaluating whether the applicant has sustained the burden of proving that he or she has a well-founded fear of persecution, the . . . [IJ] shall not require the applicant to

-8-

> provide evidence that there is a reasonable possibility he or she would be singled out individually for persecution if . . . [t]he applicant establishes that there is a pattern or practice in his or her country of nationality . . . of persecution of a group of persons similarly situated to the applicant on account of race, religion, nationality, membership in a particular social group, or political opinion; and . . . the applicant establishes his or her own inclusion in, and identification with, such group of persons such that his or her fear of persecution upon return is reasonable.

8 C.F.R. § 1208.13(b)(2)(iii).

Finally, to establish a "well-founded fear" of future persecution an asylum applicant need not show that return to his home country will "probably" or "more likely than not" result in persecution. INS v. Cardoza-Fonseca, 480 U.S. 421, 440-49 (1987) (emphasis added) (internal quotation marks omitted). It is enough that persecution on account of one of the five aforementioned protected grounds is a "reasonable possibility." Id. at 440; see also Pan v. Gonzáles, 489 F.3d 80, 85 n.4 (1st Cir. 2007). "Reasonable possibility" has been defined to include, in some circumstances, even a ten percent possibility of future persecution. See Cardoza-Fonseca, 480 U.S. at 440.

## C. Petition for Review

### 1. Past Persecution

Sugiarto argues that the record compels the conclusion that she suffered past persecution in Indonesia on account of her Christian religion, and is thus entitled to a presumption of well

-9-

founded fear of future persecution. As evidence of past persecution, Sugiarto points to her credible testimony regarding the attempted robbery and the bomb threat at the mall in Manado, both of which she claims were directed against her by anti-Christian extremist groups. The IJ and BIA found that these experiences did not amount to past persecution both because the harm she experienced did not rise to the level of "persecution" as that term is defined for immigration purposes and because Sugiarto failed to establish that these incidents bore a nexus to a protected ground.

In order to establish past persecution, Sugiarto must produce "convincing evidence of a causal connection" between the harm she endured and a statutorily protected ground, in this case, her religion. Amouri v. Holder, 572 F.3d 29, 33 (1st Cir. 2009); see also Elías-Zacarías, 502 U.S. at 483-84. She must show that her protected religious status was "at least one central reason" for why she was harmed. 8 U.S.C. § 1158(b)(1)(B)(i). Based on our review of the record, we conclude that the BIA's finding that Sugiarto failed to establish the requisite nexus between the obviously traumatic incidents she recounts and her status as a Christian was supported by substantial evidence on the record.

As for the 2003 robbery, Sugiarto admits not knowing who attacked the car. Although we have held that a petitioner who was attacked was "not required to identify her antagonists with

absolute certainty," in order to establish nexus, "she was required, in the absence of a positive identification, to furnish some credible evidence of the motivation underlying the threats." Hincapié, 494 F.3d at 219 (denying petition for review where petitioner, a Colombian woman, had not proffered sufficient evidence that the threats she received from men she assumed to be paramilitaries were actually paramilitaries rather than common criminals). Sugiarto's sole basis for concluding that the perpetrators of the attack were Islamic terrorists, rather than common thieves, was her belief that Christians "wouldn't have done such a thing" and that, based on her Internet research, an anti-Christian terrorist group was present in the area. These statements reflect little more than petitioner's conjecture about the identity of her attackers, which, even if established rather than assumed, would not compel a conclusion that the attack was religiously motivated. See Amouri, 572 F.3d at 34 (concluding that "the mere fact that extortionists were associated with an extremist group does not compel" a conclusion that extortion was politically motivated, as "fanaticism and a love of money are not mutually exclusive"). Sugiarto's testimony was thus reasonably found insufficient to meet petitioner's burden of establishing a causal nexus between the robbery and her religion.

As for the 2004 incident involving the bomb threat in the mall in Manado, petitioner argues that her credible testimony that

-11-

anti-Christian extremist groups were responsible for the attack compels a finding of past persecution. But no matter how credible a belief petitioner may hold about the perpetrator's motives, she must nevertheless provide <u>some</u> objective basis for that belief in order to meet her burden. <u>See</u> <u>Akinfolarin</u> v. <u>Gonzáles</u>, 423 F.3d 39, 44 (1st Cir. 2005); <u>see also</u> <u>Hincapié</u>, 494 F.3d at 217-18 (explaining that an alien must do more than merely express a belief that incidents were due to a statutorily protected ground in order to establish a proper nexus). Beyond noting that the incident occurred a few weeks prior to Christmas, Sugiarto offered no objective support for her belief that the bomb threat was perpetuated by terrorists targeting Christians. Moreover, as the BIA pointed out, given Sugiarto's testimony that the mall was located in a town that is 99% Muslim, the contention that this bomb threat in a public place was motivated by a desire to target Christians is even less persuasive.

We thus find that the BIA's conclusion that Sugiarto failed to meet her burden of demonstrating that the incidents she relies on to establish past persecution bore a nexus to a protected ground is amply supported by the record.[3]

---

[3] This infirmity of proof with respect to nexus alone forecloses Sugiarto's eligibility for asylum on the basis of past persecution. <u>See</u> <u>Elías-Zacarías</u>, 502 U.S. at 483-84. We therefore need not decide whether the degree of harm that she endured was necessarily of requisite severity to support such a claim. <u>See</u> <u>Nelson</u> v. <u>INS</u>, 232 F.3d 258, 263 (1st Cir. 2000) (explaining that to qualify as persecution, applicant must show that her experiences "rise above

## 2. Well-founded Fear of Future Persecution

Even absent past persecution, Sugiarto contends that the record compels the conclusion that she is entitled to asylum based on a well-founded fear of future persecution. As part of her argument, she urges us to analyze her "well-founded fear" claim through the lens of the Ninth Circuit's "disfavored group" analysis. See, e.g., Sael v. Ashcroft, 386 F.3d 922, 925 (9th Cir. 2004) (explaining that an asylum applicant can establish well-founded fear of future persecution by "prov[ing] she is a member of a 'disfavored group' coupled with a showing that she, in particular, is likely to be targeted as a member of that group"). In doing so, petitioner asks us to revisit our decision in Kho v. Keisler, 505 F.3d 50, 55 (1st Cir. 2007), rejecting the Ninth Circuit's approach, in light of the Ninth Circuit's recent clarification of that standard. See Wakkary v. Holder, 558 F.3d 1049, 1063-64 (9th Cir. 2009). For the reasons set forth below, we conclude that the agency's decision denying Sugiarto's claim for asylum on the basis of well-founded fear of future persecution was supported by substantial evidence, and thus, we do not disturb that decision.

As explained infra, "well-founded fear" has both a subjective and an objective component. The objective component is an inquiry into whether "'a reasonable person in [the applicant's]

unpleasantness, harassment, and even basic suffering").

-13-

circumstances would fear persecution on account of a statutorily protected ground,'" <u>Castillo-Díaz</u>, 562 F.3d at 26 (quoting <u>Romilus v. Ashcroft</u>, 385 F.3d 1, 7 (1st Cir. 2004)), which rests on whether persecution on such ground is a "reasonable possibility." <u>See Cardoza-Fonseca</u>, 480 U.S. at 440.

To this effect, the regulations provide that an applicant need not provide evidence of a "reasonable possibility" of being "singled out individually for persecution" in the event that the applicant establishes "a pattern or practice" in her country of persecution of "a group of persons similarly situated to the applicant" on account of a protected ground. 8 C.F.R. § 1208.13(b)(2)(iii)(A); <u>see also</u> <u>Pieterson v. Ashcroft</u>, 364 F.3d 38, 43-44 (1st Cir. 2004). Our case law has narrowly defined "pattern or practice" to encompass only the systematic or pervasive persecution of a particular group based on a protected ground, rather than generalized civil conflict or a pattern of discrimination. <u>See</u>, <u>e.g.</u>, <u>Banturino v. Holder</u>, 576 F.3d 10, 14 (1st Cir. 2009); <u>see also</u> <u>In re A-M-</u>, 23 I & N. Dec. 737, 741 (BIA 2005) (quoting <u>Lie v. Ashcroft</u>, 396 F.3d 530, 537 (3d Cir. 2005) for the proposition that "'pattern or practice' means persecution of a group that is 'systemic, pervasive, or organized'"). The idea behind the "pattern or practice" exception to the individualized proof requirement is that, where the persecution of a group on the basis of a protected ground is sufficiently widespread, a

-14-

"reasonable possibility" of persecution is evident and evidence of individualized targeting becomes unnecessary. See Chen v. INS, 195 F.3d 198, 203 (4th Cir. 1999) ("Certainly, it would not have been necessary for each individual Jew to await a personal visit to his door by Nazi storm troopers in order to show a well-founded fear of persecution." (quoting Kotasz v. INS, 31 F.3d 847, 852 (9th Cir. 1994))). Our circuit has repeatedly affirmed the BIA's determinations that persecution against Christians in Indonesia does not rise to the level of a "pattern or practice." See, e.g, Pakasi v. Holder, 577 F.3d 44, 48 (1st Cir. 2009); Kho, 505 F.3d at 54. Absent a pattern or practice, the regulations are clear that some evidence of individualized risk on account of a protected ground must be shown. See 8 C.F.R. § 1208.13(b)(2)(iii); see also Cendrawasih v. Holder, 572 F.3d 128, 131 (1st Cir. 2009); Pieterson, 364 F.3d at 43-44.

However, our Court has always taken the position, articulated in Kho, that "evidence short of a pattern or practice [of persecution] will enhance an individualized showing of likelihood of a future threat to an applicant's life or freedom." 505 F.3d at 55; see also Pulisir v. Mukasey, 524 F.3d 302, 308-09 (1st Cir. 2008) (describing it as a matter of "[c]ommon sense" that "larger social, cultural, and political forces can lend valuable context to the particular incidents and thus, can influence the weight that a fact-finder may assign to those incidents"). We

-15-

suggested in Kho that this concept was distinct from the disfavored group analysis, id., but the Ninth Circuit, responding explicitly to this statement in Wakkary, explained that "in fact th[is] fairly obvious evidentiary point is the essence of [its] disfavored group cases." 558 F.3d at 1064 (emphasis added). "In other words, when asking how likely it is that an individual applicant will be 'singled out' in the future on the basis of his group membership" the court explained, "it is indisputably relevant (though of course not dispositive) how others in his group are treated." Id.

In Banturino we decided not to consider "whether the 'sliding scale' or 'disfavored group' approach suggested in Singh v. INS, 94 F.3d 1353 (9th Cir. 1996), and revisited in Wakkary v. Holder, 558 F.3d 1049 (9th Cir. 2009), is consistent with our own precedents" because "[a]doption of that approach would not [have] change[d] the outcome in th[at] case . . . ." 576 F.3d at 15; see also Pulisir, 524 F.3d at 308-09. The same approach is appropriate here.

Sugiarto concedes that she must show individualized targeting to satisfy her burden, as our Court "has repeatedly affirmed the BIA's determinations that there is no ongoing pattern or practice of persecution against ethnic Chinese or Christians in Indonesia." See, e.g., Sipayung v. González, 491 F.3d 18, 21 (1st Cir. 2007). The BIA found accordingly here, and there is nothing on this record that would "compel" a contrary result. Instead of

-16-

a "pattern or practice" of persecution approach, Sugiarto relies on the disfavored group theory, arguing that she need only show a "comparatively low" level of individualized risk because Christians of Chinese ethnicity are a "disfavored group" in Indonesia.

It is relevant in this context that country conditions evidence on the record, namely, State Department Human Rights Reports, do indicate some degree of continuing violence against Christians perpetrated by terrorist groups in Indonesia, even if a pattern or practice is not established. See, e.g., Budiono v. Mukasey, 548 F.3d 44, 49 (1st Cir. 2008) (recognizing that "IJ should look at an individual's claim in the context of country condition reports"). But as previously discussed, the IJ and BIA reasonably concluded that Sugiarto failed to show any evidence that she was individually targeted because of her religion during either the robbery or the bomb threat in Indonesia. To this end, Sugiarto also suggests that her family in Indonesia is afraid to go to church and that being a regular and faithful churchgoer puts her at risk of being singled out individually. But as found by the BIA, "[Sugiarto] did not report that [her family in Indonesia] or even that she or either of the other two [petitioners], were individually attacked or otherwise harmed by any person or group because of their religion." This is so despite Sugiarto's testimony that she had always been active in her church in Indonesia. Without evidence of individual targeting based on a

protected ground, Sugiarto could not establish a well founded-fear of future persecution.  We therefore must allow the rejection of her asylum claim to stand.

### III. <u>Conclusion</u>

Because the BIA's denial of petitioner's asylum claim is supported by substantial evidence in the record, the petition for review is denied.

**<u>Denied</u>**.