# United States Court of Appeals
## For the First Circuit

No. 07-1481

POPPY N. SOMBAH et al.,

Petitioners,

v.

MICHAEL B. MUKASEY,
UNITED STATES ATTORNEY GENERAL,

Respondent.

ON PETITION FOR REVIEW OF AN ORDER OF
THE BOARD OF IMMIGRATION APPEALS

Before

Lynch, Chief Judge,
Torruella and Lipez, Circuit Judges.

William A. Hahn and Hahn & Matkov on brief for petitioners.
Don G. Scroggin, Trial Attorney, Jeffrey S. Bucholtz, Acting
Assistant Attorney General, and Linda S. Wendtland, Assistant
Director, U.S. Department of Justice, on brief for respondent.

June 17, 2008

**LYNCH**, **Chief Judge**. Poppy Sombah, her husband Freddy, and her minor son, all natives and citizens of Indonesia, petition for review of a decision by the Board of Immigration Appeals ("BIA") denying their applications for asylum, withholding of removal, and relief under the Convention Against Torture ("CAT"). We deny the petition.

Sombah and her son entered the United States on November 3, 2003 with non-immigrant visitor visas which authorized them to remain until May 2, 2004. They overstayed. Sombah's husband had entered on a non-immigrant visa on September 3, 2003. That visa expired on October 3, 2003, and he overstayed. On April 26, 2004, Sombah filed an application for asylum with the Department of Homeland Security ("DHS") on behalf of herself as well as her son and husband as derivative applicants.

Immigration and Customs Enforcement ("ICE") initiated removal proceedings against the Sombah family by filing Notices to Appear ("NTA") on July 13, 2004. The agency charged the Sombahs with removability for having overstayed their visas; the Sombahs conceded removability.

In her testimony before an Immigration Judge ("IJ") and in affidavits accompanying her application for asylum, Sombah described several incidents in support of her claim of persecution on account of her religion. Although born into a Muslim family in Jakarta, Sombah converted to Christianity in 1981 and married a

Christian man.  Sombah's Muslim family disowned her, "terrorized" Freddy at work, and threatened to kidnap their three children. Sombah has not received any such threats from her family since 1986.

Sombah testified to having experienced other forms of harassment due to her Christian faith.  Between 1994 and 2000, the Sombahs held monthly prayer meetings at their home with other members of their church.  Attendees at these meetings found, upon leaving, that their cars had been vandalized.  In 1999, the Sombahs' church was burned, presumably by Muslims.  The church had been erected without government approval, and the government did not allow the church to be rebuilt.  In 2001, Freddy Sombah was riding a bus when a group of thugs boarded and robbed the passengers.  The robbers made threatening comments to Freddy, referencing his Christian faith.  Also in 2001, the Sombahs traveled to Sulawesi, a separate island from their home island of Java, and attended a prayer meeting that was disrupted by a violent group.  The Sombahs were not injured in this incident.

Sombah additionally testified that Muslim neighbors killed her dog, that a neighbor blocked a pipe in order to cause sewage to flow onto her property rather than the neighbor's own, that her son was asked to vacate his apartment in a predominantly Muslim neighborhood, and that her granddaughter received a

-3-

disparaging letter from classmates at her predominantly Muslim school.

On July 26, 2005, the IJ denied Sombah's asylum application. The IJ described the threats directed at Sombah by her family as "a private matter" and stressed that they ceased in 1986. The IJ acknowledged the other incidents of harassment in detail and concluded that they did not qualify Sombah for asylum. In finding that Sombah had not established a well-founded fear of persecution were she to return to Indonesia, the IJ noted that Sombah's grown son and daughter, both Christians, continue to live there. The IJ also found it significant that before traveling to the United States, Sombah previously visited Europe for two months, including a visit to her sister residing in Germany. Sombah returned to Indonesia without seeking asylum in Europe. When Sombah later obtained a visa to visit the United States, she waited nine months before departing Indonesia, during which time she and her family suffered no harm.

The BIA affirmed the denial of relief on February 28, 2007. The BIA reiterated the incidents described in Sombah's testimony, then concluded that they did not "singly or accumulatively[] rise to the level of persecution." The BIA agreed with the IJ that because Sombah had failed to meet the requirements for asylum, she could not establish the high standards for withholding of removal or relief under the CAT.

Sombah timely petitioned to this court for review. We uphold the agency's determinations if they are "supported by reasonable, substantial, and probative evidence on the record considered as a whole." INS v. Elias-Zacarias, 502 U.S. 478, 481 (1992) (quoting 8 U.S.C. § 1105a(a)(4)) (internal quotation marks omitted). The agency's findings of fact "are conclusive unless any reasonable adjudicator would be compelled to conclude to the contrary." 8 U.S.C. § 1252(b)(4)(B). "We review legal issues de novo, granting appropriate deference to the agency's interpretation of the statutes they are charged with enforcing." Kho v. Keisler, 505 F.3d 50, 53-54 (1st Cir. 2007).

In order to qualify for asylum, Sombah bears the burden of proving that she suffered past persecution or has a well-founded fear of future persecution based on her religion. Chikkeur v. Mukasey, 514 F.3d 1381, 1382 (1st Cir. 2008); see also 8 U.S.C. §§ 1101(a)(42)(A), 1158(b)(1)(A).

There is substantial evidence in the record to sustain the BIA's conclusion that Sombah's experiences in Indonesia did not rise to the level of persecution. "Persecution," as the term is used in the immigration law, surpasses "unpleasantness, harassment, and even basic suffering." Nelson v. INS, 232 F.3d 258, 263 (1st Cir. 2000). We cannot say that the BIA erred in concluding that the intermittent harassment described by Sombah did not constitute persecution warranting asylum.

Sombah argues that in denying the existence of past persecution, the IJ erred by failing to take into account the "totality of the circumstances," including the country conditions in Indonesia.  That argument fails.  The IJ's decision discussed Department of State Country Condition Reports in the record, and the IJ even supplemented the record by introducing, sua sponte, the Department's 2005 Issue Paper regarding Christians in Indonesia. The IJ acknowledged that these sources confirm the existence of discrimination against Christians in Muslim-majority Indonesia, even at the level of national and local government.  However, these background facts do not relate in any specific way to Sombah's individual claim for asylum.  Discrimination in Indonesia does not, without more, qualify a Christian Indonesian national for asylum. See, e.g., Pulisir v. Mukasey, 524 F.3d 302, 308-09 (1st Cir. 2008); Kho, 505 F.3d at 58; Susanto v. Gonzales, 439 F.3d 57, 59-61 (1st Cir. 2006).

Sombah also argues that the agency committed legal error in finding that Sombah failed to establish a well-founded fear of future persecution.  Sombah argues that the IJ found that the Indonesian government was involved in Sombah's harassment and, from this, that agency regulations put the burden on the DHS to show that it would be reasonable for Sombah to avoid persecution by relocating to a different location within Indonesia. See 8 C.F.R. §§ 208.13(b)(2)(ii), (3).  Sombah argues that the IJ failed to

-6-

place this evidentiary burden on the DHS, and that the DHS did not meet it.

Sombah's argument fails on its premise. The IJ did not make a finding that the Indonesian government was complicit or acquiescent in private actors' mistreatment of Sombah. As noted above, the IJ made comments in her decision concerning evidence -- taken from State Department reports -- that "there continue to be certain levels of discrimination, apparently in Indonesia, both locally and nationally with respect to the treatment of Christians." Nowhere does the IJ state that the government was involved in any of the incidents that Sombah relied on for her asylum claim. Neither does the record support the suggestion that Sombah's is a case "in which the persecutor is a government or is government-sponsored." Id. § 208.13(b)(3)(ii).

In a final argument relating to the agency's determination of the asylum issue, Sombah argues that the IJ's finding of discrimination by the Indonesian government triggers "heightened scrutiny" of her claims. We need not consider the argument because Sombah failed to present it to the BIA. See Butt v. Keisler, 506 F.3d 86, 90 (1st Cir. 2007); see also 8 U.S.C. § 1252(d)(1).

Because Sombah does not meet the requirements for establishing eligibility for asylum, neither can she satisfy the

more stringent standard for withholding of removal.  See Makhoul v. Ashcroft, 387 F.3d 75, 82 (1st Cir. 2004).

Lastly, because Sombah does not make any arguments in her petition regarding relief under the CAT, those claims are waived. See Zeru v. Gonzales, 503 F.3d 59, 66 n.4 (1st Cir. 2007).

The petition is denied.