# United States Court of Appeals
## For the First Circuit

No. 07-1996

NOFITA FEBRIYANA DATAU,

Petitioner,

v.

MICHAEL B. MUKASEY, ATTORNEY GENERAL,

Respondent.

ON PETITION FOR REVIEW OF AN ORDER
OF THE BOARD OF IMMIGRATION APPEALS

Before

Lynch, Chief Judge,
Tashima,* and Lipez, Circuit Judges.

Jeanette Kain, Jeremiah Friedman, and Kaplan, O'Sullivan &
Friedman for petitioner.
Kristin A. Moresi, Trial Attorney, U.S. Department of Justice,
Office of Immigration Litigation, Peter D. Keisler, Assistant
Attorney General, Civil Division, and Barry J. Pettinato, Assistant
Director, for respondent.

August 27, 2008

* Of the Ninth Circuit, sitting by designation.

**LIPEZ, Circuit Judge**. Petitioner Nofita Febriyana Datau, a native and citizen of Indonesia, sought asylum, withholding of removal, and protection under the Convention Against Torture ("CAT"), claiming that she experienced persecution based on her Christian beliefs and the incorrect perception that she is ethnically Chinese. Both of these minority groups have repeatedly been victims of violent attacks in Indonesia. An Immigration Judge ("IJ") denied Datau's application for relief, expressing doubts about her credibility, and holding that, even if credible, she had proven neither past persecution nor a well-founded fear of future persecution. The Board of Immigration Appeals ("BIA") adopted and affirmed the IJ's decision, noting that "the discrimination suffered by the respondent does not rise to the level of persecution." Datau petitioned for review of the BIA order; we deny the petition.

**I.**

Datau lawfully entered the United States in New York in September 2001 as a non-immigrant visitor. She was authorized to remain in the country through March 8, 2002, but overstayed her visa. In her application for asylum and in later testimony before the IJ, Datau claimed that she left Indonesia because of incidents of harassment that caused her to feel threatened and unsafe there. Datau is a lifelong Protestant Christian and has facial features that make her appear to be ethnically Chinese, although she is not.

-2-

She stated that the tensions in Indonesia between the Muslim majority and the Christian and Chinese minorities, together with the episodes of violence and harassment experienced by her family and friends, led her to conclude that she would face persecution if she returned to that country.

Datau reported that she was an active member of her church, where her mother was a deacon and she served as a youth leader. She testified that she experienced several incidents of harassment due to her church membership and her faith in general. In 1997, local Muslims played loud anti-Christian music during worship, wrote obscene graffiti on the walls of the church, and threw rocks through the windows during services. In 1999, after her congregation had relocated, the Muslims set fire to the front porch of the building that Datau's church was sharing with another congregation. When church members met in private homes, the Muslims continued to play music, stoned the buildings, and knocked on the door to order them to cease their worship. Datau claims that the local authorities ignored reports of all these events. She also testified that her mother had recently told her that people continued to throw rocks at her church and hang around outside the building.

Datau offered evidence of additional harassment that she attributed to her religion, gender, and perceived ethnicity. On one mission trip to help the homeless in their area, members of

Datau's church group were threatened with knives and told not to return or they would be killed. Datau was not present when this happened, but was in the vicinity. She also experienced unwanted sexual advances from Muslim men, who "looked down on her" because of her Chinese appearance. She reported that she was approached by Muslim men several times on the bus; on one occasion, a Muslim male took her by the hand, told her she was beautiful, and stated that they should go for a walk together. Datau also feared that she would be raped because her friend, who was ethnically Chinese, was raped at her workplace after local riots in 1998. Finally, Datau claimed that she and seven of her Christian friends who also appeared ethnically Chinese consistently received failing grades at her university, which, because they were all good students, she speculated was part of a pattern of discrimination.

In September 2002, almost a year after arriving in the United States and several months past the deadline on her visa, Datau filed for asylum, withholding of removal, and protection under the CAT. In a Notice to Appear dated December 9, 2003, the Department of Homeland Security initiated removal proceedings. After a hearing, the IJ denied Datau's application for relief in an oral decision, questioning Datau's credibility and finding that the harassment she alleged "did not rise to the level of persecution." The IJ also found that Datau was unable to prove that "the government in Indonesia is unwilling or unable to protect those of

-4-

Christian faith in Indonesia."  The BIA affirmed this decision without a separate opinion.

## II.

When the BIA adopts the IJ's decision, "we review the relevant portion of the IJ's opinion as though it were the decision of the BIA."  Guillaume v. Gonzales, 504 F.3d 68, 72 (1st Cir. 2007).  The IJ's factual determinations are reviewed only to determine if they are "supported by reasonable, substantial, and probative evidence on the record considered as a whole."  Tum v. Gonzales, 503 F.3d 159, 161 (1st Cir. 2007) (quoting INS v. Elias-Zacarias, 502 U.S. 478, 481 (1992)) (internal quotation marks omitted).  This highly deferential standard requires findings of fact to be upheld "unless any reasonable adjudicator would be compelled to conclude to the contrary."  Ortiz-Araniba v. Keisler, 505 F.3d 39, 42 (1st Cir. 2007)(internal quotation marks omitted); 8 U.S.C. § 1252(b)(4)(B).

Asylum is available to an alien who is "unable or unwilling to return to . . . [her] country because of persecution or a well-founded fear of persecution on account of race, religion, nationality, membership in a particular social group, or political opinion."  8 U.S.C. § 1101(a)(42)(A).  The alien seeking asylum bears the burden of proving that she is eligible.  Bocova v. Gonzales, 412 F.3d 257, 262 (1st Cir. 2005).  This burden can be met by proving past persecution, which gives rise to a rebuttable

-5-

presumption of future persecution, or by directly proving a well-founded fear of persecution on one of the statutory grounds. Nikijuluw v. Gonzales, 427 F.3d 115, 120 (1st Cir. 2005); Guzman v. INS, 327 F.3d 11, 16 (1st Cir. 2003). The latter showing includes both subjective and objective components. Guzman, 327 F.3d at 16. The petitioner can satisfy her burden by proving a genuine fear of persecution against her personally, relying on credible and specific evidence. Id. Future persecution can also be proven with evidence that a pattern or practice of discrimination exists in the petitioner's country of origin against a group of persons similarly situated to her. 8 C.F.R. § 1208.13(b)(2)(iii). Additionally, the petitioner must establish that the persecution stems from government action or inaction. Ortiz-Araniba, 505 F.3d at 41.

## A. Credibility

Datau argues that the BIA's decision lacks support because it is based, in part, on the IJ's unclear credibility judgments. The IJ found fault with Datau's testimony because "material points of her story," including the death threats to her companions on the mission trip and the rocks thrown through the church windows, were not included in either her original application materials or in her direct testimony. Instead, these facts were mentioned only during her redirect examination. The IJ also found that Datau was, "at times, evasive, vague, and non-responsive" in her answers.

Here, however, we need not dwell on the IJ's credibility assessment.  The IJ did not expressly find the petitioner to lack credibility, noting only that the judge had "concerns" about Datau's truthfulness.  In fact, the IJ specifically noted that the decision "ultimately d[id] not turn on" Datau's credibility, instead ruling that, even accepting all of her testimony, the events she described fell short of proving either past persecution or a well-founded fear of future persecution.  Accordingly, we turn to the persecution finding.

## B. Persecution

Datau argues that she presented substantial evidence of both past persecution and the likelihood that she would be subject to future persecution if forced to return to Indonesia.  We cannot agree.  Her allegations of past persecution are in material respects equivalent to those in Susanto v. Gonzales, 439 F.3d 57, 59-60 (1st Cir. 2006), which we found inadequate to establish the requisite level of harsh treatment.  In Susanto, an ethnic Chinese Christian from Indonesia claimed that she had been harassed and threatened by Muslims as she tried to worship, that she was mugged at knifepoint and told "You Chinese, you die" on a bus, and that she was groped and insulted by Muslim men.  Id. at 59.  She further pointed to riots and injuries of other Christians, as well as the rape of a neighbor's daughter.  Id.  We concluded that harassment of this quality and degree "simply does not compel a finding of

-7-

persecution," relying on multiple decisions reaching the same outcome in cases involving similar hardships. Id. In light of our conclusion in Susanto, we cannot conclude that the IJ in this case was compelled to find that Datau's experiences in Indonesia amounted to persecution.

Datau's inability to demonstrate that the harassment she suffered in Indonesia amounted to persecution also dooms her effort to show a well-founded fear of future persecution. To make such a showing, a person must "not only harbor a genuine fear of future persecution, but also must establish an objectively reasonable basis for that fear." Laurent v. Ashcroft, 359 F.3d 59, 65 (1st Cir. 2004). However, Datau offers no evidence of likely harassment upon her return to Indonesia that would be more oppressive than the incidents she encountered in the past. We already have upheld the IJ's determination that such experiences do not constitute persecution, and we have repeatedly held that "discrimination in Indonesia does not, without more, qualify a Christian Indonesian national for asylum." Sombah v. Mukasey, 529 F.3d 49, 51 (1st Cir. 2008); see also Pulisir v. Mukasey, 524 F.3d 302, 308-09 (1st Cir. 2008); Kho v. Keisler, 505 F.3d 50, 58 (1st Cir. 2007).

Moreover, findings in the U.S. Department of State's International Religious Freedom Report for 2005, which were cited by the IJ, affirm that advances in inter-religious tolerance and cooperation have resulted from efforts by the Indonesian government

-8-

to encourage collaboration between Muslim and Christian community leaders. This evidence indicates that some improvement has occurred in conditions for the Christian minority, and Datau offers no evidence refuting the accuracy of the Report's findings. Nor does she offer evidence that her Chinese appearance on its own places her in particular jeopardy. Thus, the record suggests that Indonesia is now a more hospitable place for petitioner than it was when she left the country.

Indeed, Datau's assertion that she fears future persecution is also weakened by the fact that her family continues to live in her home area. "The fact that close relatives continue to live peacefully in the alien's homeland undercuts the alien's claim that persecution awaits [her] return." Ly, 524 F.3d at 133 (quoting Aquilar-Solis v. INS, 168 F.3d 565, 573 (1st Cir. 1999)). Datau's father, mother, and brother all continue to live in Indonesia. Although family members have reported that rocks are still thrown at their church, no members of her family have been subject to any treatment that approaches the severity of persecution.

In addition, to establish persecution Datau would need to show that it was the "direct result of government action or government-supported action, or there must be some showing that the persecution is due to the government's unwillingness or inability to control the conduct of private actors." Jorgji v. Mukasey, 514

F.3d 53, 57 (1st Cir. 2008). Datau does not contend that the government was involved in the harassment against her. Rather, she argues that when her church was stoned and later burned, the authorities ignored the congregation's reports of the attacks. She claims that the government's unwillingness to respond and its inability to protect her provides support for her fear of future persecution.

This argument fails for two reasons. First, the State Department Report indicates an increased willingness on the part of the Indonesian government to address the problems of the Christian minority. Second, even if the government were not fully effective in its response to complaints such as those made by Datau, her claim of persecution would be unavailing because – as we have explained – the incidents to which she points were not so severe that the IJ was compelled to characterize them as persecution.

We therefore uphold the BIA's denial of petitioner's asylum claim.

**III.**

Datau also seeks withholding of removal and protection under the CAT. The standard of proof for these additional claims is more stringent than for asylum. Withholding of removal requires a showing that an alien is "more likely than not" to face persecution, while protection under the CAT requires a showing that

it is "more likely than not" that the alien would be tortured if removed.  <u>Zheng</u> v. <u>Gonzales</u>, 416 F.3d 97, 101 n.3 (1st Cir. 2005). Because Datau fails to establish her eligibility for asylum, her claim for withholding of removal and protection under the CAT necessarily fail as well.

<u>Petition denied</u>.