# United States Court of Appeals
## For the First Circuit

No. 07-2363

ESTER PAULINE BUDIONO,

Petitioner,

v.

MICHAEL B. MUKASEY, ATTORNEY GENERAL,

Respondent.

ON PETITION FOR REVIEW OF AN ORDER
OF THE BOARD OF IMMIGRATION APPEALS

Before

Lynch, Chief Judge,
Boudin and Stahl, Circuit Judges.

William A. Hahn and Hahn & Matkov on brief for petitioner.
Kristina R. Sracic, Trial Attorney, Office of Immigration
Litigation, U.S. Department of Justice, Gregory G. Katsas,
Assistant Attorney General, and Terri J. Scadron, Assistant
Director, on brief for respondent.

November 19, 2008

**LYNCH**, **Chief Judge**.  Ester Pauline Budiono, a young Indonesian woman, petitions for review of the denial of her application for asylum by the Board of Immigration Appeals ("BIA"). She is a Christian and ethnic Chinese and asserted persecution on both grounds.  We deny the petition.

Budiono arrived in the United States on December 17, 2003 on a tourist visa that authorized her to remain in the country until June 14, 2004.  She overstayed and on January 25, 2005, filed an application for asylum with the Department of Homeland Security ("DHS"), asserting she had been and would be persecuted based on her religion and ethnicity.  DHS denied her application, and on February 18, 2005, DHS served her with a Notice to Appear, charging her as removable under § 237(a)(1)(B) of the Immigration and Nationality Act for remaining in the United States longer than permitted.  Budiono conceded her removability and sought relief through her application for asylum, withholding of removal, and relief under the Convention Against Torture ("CAT").

I.

We summarize Budiono's testimony before the Immigration Judge ("IJ").

Budiono testified she was persecuted in Indonesia on the basis of her Christian Protestant religion and her Chinese ethnicity.  Between 1990 and 1996, she faced discrimination at her elementary school in that teachers would ask more difficult

-2-

questions of the Chinese students than of native Indonesians, that people would bother her and the other Chinese students when she walked outside, and that men would try to touch her. Her school also received a telephone threat that it would be burned down in 1998.

In her written affidavit submitted to the IJ, but not in her oral testimony, Budiono also described riots that occurred during May 13-15, 1998. She witnessed these riots on television. The rioters looted and set many stores on fire. Chinese women who were storekeepers and owners of some stores were abused. After these incidents, Budiono's parents decided not to allow her to leave home except to attend school and church.

In 1998, when Budiono was thirteen years old, she was going home from school in a pedicab when five Muslim males stopped her in the middle of the road and started to touch her face. Although the driver of the pedicab tried to defend her, the men pushed him to the ground. The five Muslim men then left. She claimed that the men targeted her because she was Chinese and because she was Christian. The assailants knew she was Christian because they had been sitting outside her Catholic school.

While attending Christmas services in 2000, Budiono heard broken glass and screaming outside. She believed that Muslim men were breaking the windows of cars outside the church. The incident was reported to law enforcement, but no arrests were made.

Some of her strongest testimony concerned an incident, in 2003, of sexual assault on a friend. She was with her friend Sarah and another friend when they were stopped by five men who asked them for their money. One of them suddenly hugged Sarah. While the men continued to try to touch Sarah, Budiono and her friend were able to escape and find a security guard to help. When they returned, they found Sarah naked and unconscious. They took her back to their dorm at school. The next day the principal contacted their parents to come and get them.

Budiono later attended college in Indonesia. During college, people would bother her if she left school by touching her or calling out to her saying, "Chinese, hey, you beautiful Chinese." In 2003, her brother's motorcycle was stolen. Her family reported it to the police, but the police did not respond.

The IJ rejected Budiono's application for asylum, withholding of removal, and protection under the CAT in an oral decision on March 31, 2006.[1] The IJ found Budiono credible, but concluded that she had failed to meet her burden of proof for establishing either past persecution or a well-founded fear of future persecution. With respect to past persecution, the IJ found that "nothing ever happened to [Budiono]" and that "she led a fairly quiet and peaceful life in Indonesia." These unfortunate

---

[1] Budiono does not challenge the BIA's denial of her application for withholding of removal or protection under the CAT.

-4-

statements by the IJ form the centerpiece of Budiono's claims of error.

The IJ found that the harassment described by Budiono did not rise to the level of persecution on one of the statutorily enumerated grounds. On the question of the identity of the alleged persecutors, the harassment was committed by individuals, not the government, and the IJ noted that Budiono did not seek help from the police to stop the harassment. The IJ further found Budiono did not establish that the government was unable or unwilling to protect her. Indeed, the IJ stated that "the government is doing what it can" to quell violence and promote inter-ethnic unity.

As to future persecution, the IJ stressed that Budiono's family members have continued live unharmed in Indonesia. The IJ found that Budiono failed to establish a well-founded fear of future persecution on the basis of the evidence of country conditions and her family's relative safety in Indonesia. The IJ granted Budiono voluntary departure.

Budiono appealed the denial to the BIA, which affirmed in a per curiam opinion issued August 7, 2007 and dismissed the appeal. The BIA independently reviewed the record, and it adopted and affirmed the decision of the IJ, "except for her finding that [Budiono] has 'led a fairly quiet and peaceful life in Indonesia.'" In so holding, the BIA may have implicitly rejected as well the IJ's statements that "nothing ever happened" to Budiono.

The BIA considered the evidence of country conditions and concluded that the 1998 riots and articles discussing more recent violence in Indonesia were not sufficient to disturb the IJ's finding that Budiono did not show a well-founded fear of future persecution on account of religion or ethnicity. The BIA also examined the State Department country condition report for Indonesia for 2005, which showed "a decrease in discrimination and harassment of ethnic Chinese, and that recent reforms increased religious and cultural freedoms." The 2005 reports examined by the BIA also included information about violence against women, including the treatment of rape. The BIA reinstated the IJ's grant of voluntary departure but reduced the period granted from about ninety days to sixty days.

## II.

Budiono raises three primary challenges in her petition: first, that the BIA erred in affirming the IJ's decision but striking particular findings; second, that the IJ's conclusion that "nothing happened" demonstrates the IJ's failure to evaluate properly Budiono's claims of past persecution or a well-founded fear of future prosecution; and third, that the IJ and BIA did not properly consider the evidence of country conditions in Indonesia for Christians and ethnic Chinese.

Budiono's opening argument is that the BIA erred because it adopted almost the entirety of the IJ's decision while striking

one of the IJ's conclusions and adding additional commentary. She contends that such a "hybrid" opinion is impermissible. This argument lacks merit. The law is clear that the BIA can adopt part of the IJ's decision and add its own analysis, and that the court can review "those portions of the IJ's opinion that the BIA has adopted." Ouk v. Keisler, 505 F.3d 63, 67 (1st Cir. 2007) (quoting Romilus v. Ashcroft, 385 F.3d 1, 5 (1st Cir. 2004)) (internal quotation marks omitted).

She next attacks the factual findings, which we review under the deferential substantial evidence standard. Kechichian v. Mukasey, 535 F.3d 15, 20 (1st Cir. 2008). "When the BIA adopts the IJ's opinion and discusses some of the bases for the IJ's decision, we have authority to review both the IJ's and the BIA's opinions." Ouk v. Gonzales, 464 F.3d 108, 110 (1st Cir. 2006). We uphold the BIA's findings if they are "supported by reasonable, substantial, and probative evidence on the record considered as a whole." Sharari v. Gonzáles, 407 F.3d 467, 473 (1st Cir. 2005) (quoting INS v. Elias-Zacarias, 502 U.S. 478, 481 (1992)) (internal quotation marks omitted). We reverse only if "any reasonable adjudicator would be compelled to conclude to the contrary." 8 U.S.C. § 1252(b)(4)(B); see also, e.g., Chikkeur v. Mukasey, 514 F.3d 1381, 1382-83 (1st Cir. 2008).

To qualify for asylum, Budiono bears the burden of proving that she has suffered past persecution or has a well-

founded fear of future persecution based on her religion or ethnic Chinese origins.  See Chikkeur, 514 F.3d at 1382; see also 8 U.S.C. § 1101(a)(42)(A) (defining "refugee" as one who suffers persecution on the basis of "race, religion, nationality, membership in a particular social group, or political opinion").  To qualify as persecution, the harm to the petitioner must exceed "unpleasantness, harassment, and even basic suffering." Nelson v. INS, 232 F.3d 258, 263 (1st Cir. 2000).  Moreover, the alleged persecution must be "the direct result of government action, government-supported action, or government's unwillingness or inability to control private conduct." Nikijuluw v. Gonzales, 427 F.3d 115, 121 (1st Cir. 2005).

We agree with the BIA that the record does not support the IJ's statement that Budiono has led a fairly quiet and peaceful life in Indonesia.  Nor does the record support the IJ's repeated statement that "nothing happened" to Budiono.  Perhaps the IJ meant only that Budiono, unlike her friend, had not been sexually assaulted.  The record does show that Budiono -- whom the IJ found credible -- witnessed the onset of a sexual assault of a close friend, that she narrowly escaped that fate, and, in addition to that experience, that she genuinely feared the men who harassed her outside her school.  These effects were not "nothing," and the IJ's characterizations of Budiono's experiences were ill-chosen and insensitive.

Budiono argues that the IJ's ruling that "nothing happened" so infects the IJ's reasoning that it is clear the IJ did not correctly analyze the testimony. From this, she argues that we should conclude the infection is fatal, that the BIA's independent review of the record should be disregarded, and that the case must be remanded. None of those conclusions is warranted.

Those unfortunate remarks were not the backbone of the IJ's rejection of Budiono's asylum claim, and substantial evidence nonetheless supports the determination that the harms Budiono suffered in Indonesia did not constitute persecution. The IJ recognized that although the incidents of harassment in school were "naturally uncomfortable to a young female," they did not rise to the level of persecution.[2]

We are not compelled to conclude that she "was subjected to systematic maltreatment rising to the level of persecution, as opposed to a series of isolated incidents." Topalli v. Gonzales, 417 F.3d 128, 132 (1st Cir. 2005). Our case law supports the findings of the BIA and IJ here.

---

[2]  Budiono relies on In re Y-C-, 23 I. & N. Dec. 286 (BIA 2002)(considering petitioner's age to excuse failure to file asylum application within one year of arrival), to argue that the IJ needed to "take . . . into account" the fact that the "incidents . . . occurred during [Budiono's] formative years" and therefore deserve special consideration. Even taking those effects as having an impact on Budiono, the evidence still does not compel a finding of persecution.

In Susanto v. Gonzales, 439 F.3d 57, 59 (1st Cir. 2006), this court concluded that materially similar (indeed, arguably stronger) allegations of past persecution did not require a finding of persecution. In Susanto, the petitioner, an Indonesian ethnic Chinese Christian, testified that she had been threatened and harassed by Muslims while she worshiped, that she was mugged at knifepoint and told "You Chinese, you die," that she was groped and insulted by Muslim men, and that a Christian neighbor's daughter had been raped. Id. This court held that the record in Susanto "simply does not compel a finding of persecution." Id.

In Datau v. Mukasey, 540 F.3d 37 (1st Cir. 2008), this court also rejected the petition of a Christian Indonesian woman whose features made her appear Chinese. Datau held that unwanted advances from Muslim men, the rape of a friend, and alleged discriminatory grading at a university did not compel a finding of past persecution. Id. at 41. Datau had also not established a well-founded fear of future persecution in light of improved country conditions in Indonesia and the fact that her family continued to live unharmed in Indonesia. Id. at 42.

Budiono also attacks the IJ's finding that Budiono had not shown that the Indonesian government actively discriminates against and persecutes Chinese Christians. Budiono correctly notes that the IJ should look at an individual's claim in the context of country condition reports. El Moraghy v. Ashcroft, 331 F.3d 195,

-10-

204 (1st Cir. 2003).  The IJ examined the country conditions in Indonesia, and the BIA explicitly relied on the 2005 State Department country report for Indonesia.  Those reports do show there is a problem with violence against women, but also that the government is trying to stop such violence.  The IJ reasonably found that "while there is some sporadic violence, when viewed in the aggregate the Indonesian government is attempting to quell these kinds of incidences."

That finding too is consistent with precedent in this circuit.  See Sinurat v. Mukasey, 537 F.3d 59, 62 (1st Cir. 2008) ("The IJ, and ultimately the BIA, reasonably found no connection between the Indonesian government's treatment of Christians generally and the isolated attack on Sinurat."); Kho v. Keisler, 505 F.3d 50, 54 (1st Cir. 2007) ("We have repeatedly affirmed the BIA's determinations . . . that there is no ongoing pattern or practice of persecution against . . . Christians in Indonesia."); Sombah v. Mukasey, 529 F.3d 49, 51 (1st Cir. 2008) ("Discrimination in Indonesia does not, without more, qualify a Christian Indonesian national for asylum.").

Finally, substantial evidence supports the IJ's and BIA's determination that Budiono failed to establish a well-founded fear of future persecution in light of the fact that her family continues to live in relative safety in Indonesia.  "The fact that close relatives continue to live peacefully in the alien's homeland

-11-

undercuts the alien's claim that persecution awaits [her] return."
Ly v. Mukasey, 524 F.3d 126, 133 (1st Cir. 2008) (quoting Ouk, 464
F.3d at 111).

### III.

We deny the petition for review.