# United States Court of Appeals
## For the First Circuit

No. 08-2178

MAYA CENDRAWASIH,

Petitioner,

v.

ERIC H. HOLDER, JR.,[*] ATTORNEY GENERAL,

Respondent.

ON PETITION FOR REVIEW OF AN ORDER
OF THE BOARD OF IMMIGRATION APPEALS

Before
Boudin, Tashima,[**] and Howard,
<u>Circuit Judges</u>.

<u>Randall A. Drew</u> and <u>Wiggin & Nourie, P.A.</u> on brief for petitioner.
<u>Greg D. Mack</u>, Senior Litigation Counsel, Department of Justice, Civil Division, Office of Immigration Litigation, and <u>Michael F. Hertz</u>, Deputy Assistant Attorney General, Civil Division, on brief for respondent.

July 2, 2009

---

[*]Pursuant to Fed. R. App. P. 43(c)(2), Attorney General Eric H. Holder, Jr. has been substituted for former Attorney General Michael B. Mukasey as respondent.

[**]Of the Ninth Circuit, sitting by designation.

**BOUDIN**, <u>**Circuit Judge**</u>.  Maya Cendrawasih, a native and citizen of Indonesia, seeks review of the Board of Immigration Appeals ("BIA")'s denial of her asylum application.  Cendrawasih left Indonesia on September 26, 2001, entering the United States on a non-immigrant visitor's visa that expired on March 24, 2002.  She sought asylum, withholding of removal, and relief pursuant to the Convention Against Torture ("CAT") in November 2002.  After deportation proceedings were initiated, a hearing was scheduled to consider her applications for all three forms of relief.

Cendrawasih testified that she is both Christian and ethnic Chinese.  She recounted an incident where her brother was attacked and robbed by a group of Muslims, as well as incidents where a friend's relatives were raped and stabbed.  She personally felt threatened when, in 1998, a group of Muslims--one carrying a knife--approached her on a bus, although she escaped by leaping off the bus.  In June 2001, a Muslim taxi driver sexually assaulted Cendrawasih, but she managed to escape without physical injury; the driver called out after her: "Chinese girl, where are you running to?"

Cendrawasih also testified that toward the end of her time in Indonesia, she became afraid to attend church due to bombings.  Since coming to the United States, she has been an active member of her church.  Cendrawasih married an Indonesian man in December 2003; the two have a young, U.S. citizen son.  Although

her father remained in Indonesia at the time of her initial hearing, both of Cendrawasih's parents are now lawful permanent residents of the United States.

After the hearing, the IJ denied her relief save for granting her voluntary departure; the IJ did not consider her asylum application, finding it time-barred, but resolved the withholding and CAT claims on the merits. Cendrawasih appealed to the BIA; the BIA initially dismissed her appeal but on motion to reconsider, remanded the asylum claim for resolution on the merits. The IJ--relying on the testimony from the first hearing--denied relief; the BIA then dismissed Cendrawasih's second appeal. She now seeks review in this court, challenging only the denial of asylum.

To obtain asylum, Cendrawasih had to establish a well-founded fear of future persecution on account of race, religion, nationality, membership in a social group, or political opinion. 8 U.S.C. § 1101(a)(42)(A) (2006); 8 C.F.R. § 208.13(b) (2009). A showing of past persecution gives rise to a rebuttable presumption of future persecution. 8 C.F.R. § 208.13(b)(1). In addition, the applicant must establish that the persecution is a result of government or government-supported action, or the government's inability or unwillingness to control private actors. Budiono v. Mukasey, 548 F.3d 44, 48 (1st Cir. 2008).

-3-

The IJ found Cendrawasih to be credible, but denied relief because she had failed to establish that her fear of future persecution was well-founded.  The IJ determined that Cendrawasih's testimony seeking to show past persecution established only a few isolated incidents, and her fear of future persecution--while genuine--was not objectively reasonable, particularly in light of improved country conditions.  On review, the BIA agreed that Cendrawasih failed to meet her burden of proof to qualify for asylum; it also denied her request to consolidate her proceedings with her husband's application.

Where a challenge is to factual determinations, we must uphold IJ and BIA decisions when "supported by reasonable, substantial, and probative evidence on the record considered as a whole," INS v. Elias-Zacarias, 502 U.S. 478, 481 (1992) (citation omitted), reversing only if a reasonable fact-finder would be compelled to conclude relief was warranted, id. at 483-84 (codified at Immigration and Nationality Act § 242(b)(4)(B), 8 U.S.C. § 1252(b)(4)(B)).  There may, of course, be other flaws in a decision beside raw infirmities in fact-finding.

Cendrawasih's main argument in this court is that her case should be remanded because the IJ and the BIA did not consider the impact of her brother's successful application for asylum on her claims.  She argues that a well-founded fear of persecution can be based on the experiences of others who are similarly situated,

and her brother is similarly situated to her. Her husband obtained a remand from an adverse ruling, Ticoalu v. Gonzales, 472 F.3d 8 (1st Cir. 2006), based in part on his brother's successful asylum application, and on remand, her husband was granted withholding of removal.[1]

We said in Ticoalu that the BIA should explicitly have considered whether the order granting Ticoalu's brother asylum was material to Ticoalu's own claim; the court said that it was "likely that either the IJ in the instant case or the IJ who issued Ticoalu's brother's order has erred in assessing the extent of inter-religious violence in Indonesia and, in particular, in Sulawesi." Id. at 12. However, there is no such tension in this case and Ticoalu's reasoning does not apply: after Cendrawasih filed her petition, the BIA reversed the IJ's grant of asylum to her brother.

The IJ and BIA here appropriately relied on country condition reports, Budiono, 548 F.3d at 49, and found that, while there is still religious tension in Indonesia, "conditions . . . appear to be improving." The problems faced by Christian and ethnic Chinese individuals in Indonesia have been addressed by this court on numerous occasions, and we have upheld this determination,

---

[1] Ordinarily, a spouse's successful asylum application would allow him to obtain derivative status for the other spouse. 8 U.S.C. § 1158(b)(3); 8 C.F.R. § 1208.21. But because her husband's asylum claim was time-barred and he obtained only withholding of removal, the derivative route is not available to Cendrawasih.

finding that there is "no ongoing pattern or practice of persecution against ethnic Chinese or Christians in Indonesia," Kho v. Keisler, 505 F.3d 50, 54 (1st Cir. 2007), and that thus country conditions without more do not qualify a Christian Indonesian for asylum, Sombah v. Mukasey, 529 F.3d 49, 51 (1st Cir. 2008).

The individual difficulties Cendrawasih has faced, while thoroughly unpleasant, are a series of isolated incidents, Budiono, 548 F.3d at 49, no greater than those faced by other Indonesian Christians that this court has found insufficient to warrant asylum. Susanto v. Gonzales, 439 F.3d 57 (1st Cir. 2006); Budiono, 548 F.3d at 46, 49-50. An individual singled out and more seriously threatened than normal on account of a protected characteristic may still satisfy the statutory test; but Cendrawasih does not meet this standard--or at least the IJ and BIA supportably so found.

Cendrawasih also claims that the BIA erred in distinguishing her case from her husband's based on her ability to relocate to Jakarta, which has experienced less religious tension than her husband's native Sulawesi. Federal regulations provide that an asylum application may be denied if it is demonstrated by a preponderance of the evidence that "[t]he applicant could avoid future persecution by relocating to another part of the applicant's country . . . and under all the circumstances, it would be

reasonable to expect the applicant to do so." <u>Tendean</u> v. <u>Gonzales</u>, 503 F.3d 8, 11 (1st Cir. 2007) (quoting 8 C.F.R. § 1208.13(b)(1)(i)(B)).

It is not easy to sustain an order expelling Cendrawasih--the parent of a young son--while her husband is entitled to remain in this country. But the problem is not that there exists proof of a well-founded threat to Cendrawasih's safety: it is that Congress does not allow derivative status to the spouse of one who himself qualifies for withholding of removal, <u>compare</u> 8 U.S.C. § 1158(b)(3); 8 C.F.R. § 1208.21, even though this could result in the break-up of a family. Congress can alter this policy; we cannot.

The petition for review is <u>denied</u>.