# United States Court of Appeals
## For the First Circuit

No. 06-2389

MAC ARTHUR PAKASI, ET AL,

Petitioner,

v.

ERIC J. HOLDER,* Attorney General,

Respondent.

PETITION FOR REVIEW OF AN ORDER
OF THE BOARD OF IMMIGRATION APPEALS

Before

Boudin, Selya and Howard,
<u>Circuit Judges</u>.

<u>William A. Hahn</u> and <u>Hahn & Matkov</u> on brief for petitioner.
<u>Peter D. Keisler</u>, Assistant Attorney General, Civil Division, <u>Richard M. Evans</u>, Assistant Director, and <u>Paul Fiorino</u>, Trial Attorney, Office of Immigration Litigation, Civil Division, United States Department of Justice, on brief for respondent.

August 18, 2009

---

* Pursuant to Fed. R. App. P. 43(c)(2), Attorney General Eric J. Holder has been substituted for former Attorney General Michael B. Mukasey.

**HOWARD, <u>Circuit Judge</u>.** Mac Arthur Pakasi (Mac Arthur)[1] and his son, Hiskiah, hailing from Sulawesi Island in Indonesia, are ethnic Manadonese and Christians seeking review of a final order from the Board of Immigration Appeals (BIA). Because no record evidence compels a different result than that espoused by the Immigration Court and upheld by the BIA, and because no procedural violations or errors of law were made, the petition for review is denied.

## I. History

Mac Arthur Pakasi entered the United States in March 1992 as a non-immigrant visitor. Hiskiah followed in July 1994, with the same status and authorization to remain in the country until January 1995. After remaining in the United States years longer than permitted, they both were charged with being subject to removal pursuant to 8 U.S.C. § 1227(a)(1)(B). The petitioners conceded removability, but on December 19, 2003 -- eleven years after Mac Arthur's arrival in the United States -- they sought asylum, withholding of removal, and relief under the Convention Against Torture (CAT). Both petitioners testified in support of their applications before an Immigration Judge (IJ), as did Mac Arthur's spouse and Hiskiah's mother Ethmy Pakasi.

---

[1] Petitioner Mac Arthur Pakisi's name appears variously as "MacArthur" and "Mac Arthur." We adopt the spelling as it appears in the decisions of the Immigration Judge and Board of Immigration Appeals.

-2-

Collectively, the petitioners and Ethmy Pakasi testified that in 1990 Mac Arthur was beaten because of is involvement with a Christian church building committee, and that Mac Arthur informed the police of the beating. A construction permit sought by the building committee was denied, Mac Arthur believed, because the government did not want to inflame the local Muslim community. Additionally, the Pakasi family's home was stoned on several occasions. These experiences resulted in Mac Arthur abandoning the family home in favor of a different residence in Jakarta, and later fleeing to the United States.

On one occasion, Ethmy was accosted by two Muslims. As one brandished a knife, the other burned Ethmy on her hand with a cigarette, allegedly because she was wearing a cross.

For his part, Hiskiah was treated differently from other children due to his religion and appearance. Hiskiah also testified that since his arrival in the United States, conditions were getting worse in Indonesia and that "he heard of church burnings and the killing of Christians."

Mac Arthur ultimately left Indonesia in 1992. His wife and child remained at the family home in Indonesia for two years, attending weekly church services.

The IJ denied the applications, and the BIA subsequently dismissed the petitioners' timely appeal in an August 31, 2006 order that affirmed and adopted the IJ's decision. The BIA agreed

-3-

with the IJ that the petitioners' asylum claims were time-barred, having been filed many years beyond the one-year deadlines, and that the petitioners had failed to establish changed circumstances such as would excuse the late filings. The BIA also concluded that the petitioners had "failed to meet the burdens of proof" relevant to their claims of persecution and torture.

In its order, the BIA noted that it declined to rely on descriptions of recent violence included in six newspaper articles that the petitioners had submitted, and also held that the newly submitted information did not warrant a remand for consideration by the IJ. See Matter of S-H, 23 I&N Dec. 462 (BIA 2002).

## II. Discussion

The petitioners do not seek review of the determination that their asylum claims are time-barred, nor do they make any argument under the CAT. Those claims are thus abandoned. As for their challenge to the denial of withholding of removal, the petitioners advance a spate of arguments, most prominently emphasizing that the IJ and BIA failed adequately to take into account country conditions as outlined in State Department reports and erroneously concluded that conditions were improving in 2000 - 2002; that the IJ did not take into account evidence that the Indonesian government discourages the construction of Christian churches; and that the IJ and BIA failed to consider the "totality" of the petitioners' circumstances in light of country conditions.

-4-

According to the petitioners, these alleged derelictions resulted in the petitioners' cases not being evaluated under the correct legal standards and require remand for further proceedings.

The petitioners' main arguments are related in that they assert that the IJ and BIA did not fairly assess the record and explain the results.  In support, the petitioners invoke <u>Gomes</u> v. <u>Gonzales</u>, 473 F.3d 746 (7th Cir. 2007).  This case, however, bears little resemblance to <u>Gomes</u>; the IJ here did not selectively read the record, as the Seventh Circuit concluded had occurred in <u>Gomes</u>. Rather, the IJ viewed the record as a whole - taking into account both the State Department country conditions reports and other record evidence.  <u>See</u> <u>Waweau</u> v. <u>Gonzales</u>, 437 f.3d 199, 202, n.1 (1st Cir. 2006) (the decision maker is to consider both country conditions reports and record evidence contradicting those reports).

The IJ adequately addressed the country conditions, noting that conditions were "tense" with ongoing incidents of "religious violence."  Further, the IJ indicated clearly that country conditions "did, in fact deteriorate in approximately late 1997 and 1998" and "that there were spikes in violence between 1998 and 2000."  The IJ also noted, however, that Mac Arthur did not file his application for protection from persecution during these troubled times.

Additionally, the IJ considered the 2002 State Department report on country conditions that, while acknowledging sectarian violence, also states that in 2001 the Indonesian government sent thousands of elite soldiers and police officers to Sulawasi to stem the violence. This direct action, according to the report, greatly reduced the violence that had been ongoing since 1998.

Petitioners emphasize the restrictions on construction and expansion of houses of worship, but these policies applied to all religious groups and they did not prevent either petitioner or many Christians in Indonesia from practicing their religion. Moreover, according to their own testimony, the petitioners were able to practice their religion regularly and freely. Ethmy testified that she attended church every Sunday even after her reported attacks. No testimony was given that the government of Indonesia banned the petitioners' practices.

In Gomes, relied on by the petitioners, the court held that the IJ had leaned too heavily on country conditions reports, to the exclusion of other evidence, including specific evidence of possible persecution against the petitioners in that case. 473 F.3d at 756. Here, the petitioners have not presented evidence that would compel a finding of past persecution. Although Hiskiah testified that he was treated differently than others, he remained in Indonesia after his father's departure and attended Catholic school. No evidence came before the IJ indicating Hiskiah was

beaten, arrested, detained or suffered torture in any manner at any time. To establish past persecution, the petitioners must prove something more than "harassment or annoyance," Aquilar-Solis v. INS, 168 F.3d 565, 570 (1st Cir. 1999), and we have held that "discrimination in Indonesia does not, without more, qualify a Christian Indonesian national for [relief]." Sombah v. Mukasey, 529 F.3d 49, 51 (1st Cir. 2008).

Ethmy's lone experience, involving a cigarette burn to her hand and a brandished knife, does not rise to the level of persecution. "To qualify as persecution, a person's experience must rise above unpleasantness, harassment or even basic suffering." Nelson v. INS, 232 F. 3d 258, 263 (1st Cir. 2000).

Mac Arthur presents a history of episodic incidents. He was beaten, his house was stoned, and his church building permit was denied. But "mistreatment must ordinarily entail more than sporadic abuse in order to constitute persecution." Bocova v. Gonzales, 412 F.3d 257, 263 (1st Cir. 2005).

As the petitioners have not shown past persecution, they do not benefit from a presumption that they are susceptible to future persecution, and thus they must demonstrate that it is nevertheless more likely than not that their lives or freedom will be threatened if they return to Indonesia. Sharari v. Gonzales, 407 F.3d. 467, 474 (1st Cir. 2005). On this score, in addition to the country conditions reports relied on by the IJ, the record

reflects that Mac Arthur's wife and child remained in Indonesia for two years, without harm, after his departure. Mac Arthur himself had traveled to Singapore for a number of days and voluntarily returned to Indonesia. These facts undermine claims of a clear probability of persecution or a fear of persecution. Jean v. Gonzales, 461 F.3d. 87, 91 (1st Cir. 2006); Aguilar-Solis, 168 F.3d at 573. Moreover, although the petitioners assert that there is a pattern or practice of persecuting Christians in Indonesia, we "have repeatedly affirmed the BIA's determinations...that there is no ongoing pattern or practice of persecution against...Christians in Indonesia," Kho v. Keisler, 505 F.3d 50, 54 (1st Cir. 2007), and the IJ and BIA were not required to conclude differently on this record.

The petitioners also urge us to reverse the BIA's ruling because the administrative tribunal declined to remand in light of new country conditions evidence. We review the BIA's decision on a motion to remand for abuse of discretion. Zhang v. Ashcroft, 348 F.3d 289, 293 (1st Cir. 2003) (citing Nascimento v. INS, 274 F.3d 26, 28 (1st Cir. 2001)). Abuse of discretion exists only where the denial was made "without a 'rational explanation, inexplicably departed from the established policies, or rested on an impermissible basis.'" Id. (quoting Nascimento, 274 F.3d at 28).

The news articles submitted by the petitioners to the BIA, which post-date the last hearing before the IJ, do not

demonstrate that the BIA abused its discretion in declining to remand. The BIA did consider the evidence and concluded that it failed to establish a substantial likelihood of a different result upon remand. The BIA did not abuse its discretion in concluding that the news articles were insufficiently related to the petitioners' claims such that the outcome would be altered on remand. See Bhanot v. Chertoff, 474 F.3d 71, 74 (2d Cir. 2007). See also Hussain v. Gonzales, 477 F.3d 153, 158 (4th Cir. 2007).

Finally, the petitioners argue that the IJ and BIA failed to take into account the totality of the record evidence and the petitioners' circumstances. As evidenced by the above discussion, the record belies that claim. While the IJ may not have specifically discussed each piece of evidence, she clearly did consider the country conditions reports and the testimony of each witness. There is no requirement that every single piece of evidence be discussed in an IJ's decision. Morales v. INS, 208 F.3d 323, 328 (1st Cir. 2000).

The petition for review is denied.