# United States Court of Appeals
## For the First Circuit

No. 08-2083

JIA DUAN DONG,

Petitioner,

v.

ERIC H. HOLDER, JR., ATTORNEY GENERAL,

Respondent.

PETITION FOR REVIEW OF AN ORDER OF THE BOARD

OF IMMIGRATION APPEALS

Before

Boudin, Hansen,[*] and Lipez,
<u>Circuit Judges</u>.

<u>Theodore N. Cox</u> on brief for petitioner.
<u>Manuel A. Palau</u>, Trial Attorney, Office of Immigration Litigation, <u>Michael F. Hertz</u>, Acting Assistant Attorney General, and <u>Terri J. Scadron</u>, Assistant Director, on brief for respondent.

November 6, 2009

---

[*]Of the Eighth Circuit, sitting by designation.

**LIPEZ**, **Circuit Judge**.  Petitioner Jia Duan Dong, a citizen of China, seeks review of a decision of the Board of Immigration Appeals ("BIA") affirming the denial of his application for asylum.  Dong argues that the BIA erroneously failed to consider whether he qualifies for asylum under section 601(a) of the Illegal Immigration Reform and Immigrant Responsibility Act of 1996, Pub. L. No. 104-208, 110 Stat. 3009-546, which extends refugee status to certain individuals who have been or will be subjected to coercive population control procedures such as involuntary sterilization, or who have been or will be persecuted for resisting a coercive population control program.

Concluding that the BIA did not err, we deny the petition.

**I.**

Dong, a citizen of China, entered the United States without admission or parole at an unknown port of entry on the Mexican border on March 10, 2004.  Several months later, on December 10, 2004, Dong filed an application for asylum, withholding of removal, and protection under the United Nations Convention Against Torture.  The Department of Homeland Security commenced removal proceedings on February 3, 2005. On May 3, 2005, an immigration judge ("IJ") found Dong removable as an alien present in the United States without admission or parole, a status he conceded.  See 8 U.S.C. § 1182(a)(6)(A)(i).  A hearing on the

-2-

merits of Dong's asylum application then occurred before the same IJ on July 7, 2005.

According to petitioner's testimony, as well as other evidence before the IJ, Dong was born in 1963 in Fuzhou, the capital city of China's Fujian Province. Dong was raised in Fuzhou and eventually took a job in a local paper factory. On November 28, 1990, Dong married Kangzhen Jiang in a traditional ceremony. The marriage was registered with authorities on June 17, 1991, and, on August 1, 1991, Kangzhen gave birth to their first child, a girl. Two months after the birth, Chinese family-planning authorities required Kangzhen to submit to the insertion of an intrauterine device ("IUD"). Dong was not present when this occurred. Afterwards, Kangzhen was required to regularly report to a local hospital for gynecological exams to ensure that the IUD remained in place.

During one such examination on May 10, 1993, nurses discovered that Kangzhen had become pregnant again, despite the IUD. According to Dong, who was not present at the exam, Kangzhen pleaded with family-planning authorities at the hospital to allow her to continue the pregnancy, but they forced her to abort it. Nurses physically restrained Kangzhen by pinning her down, and the abortion procedure, which lasted about an hour, was painful. Dong described her as "mentally unnormal" after her return home.

After the abortion, authorities fitted Kangzhen with a new IUD and again required her to submit to gynecological exams three times a year. In 1995, four years after the birth of their first child, Dong and Kangzhen applied for a "birth permit" to have a second child. According to Dong, the authorities informed him at that time that Chinese law would require that he or Kangzhen be sterilized after the second birth. The permit was eventually approved; on June 9, 1996, Kangzhen gave birth to a boy.

Dong testified that shortly after the birth of his second child, a group of officials came to his home to enforce the sterilization policy. Although Dong was at work at the time, his wife later told him that the officials brought her to a local hospital and forced her to undergo a sterilization procedure. By the time Dong learned of the situation and traveled to the hospital, the procedure had already been completed.

Dong claims that he resolved to leave China after the sterilization, explaining that the incident was "a permanent scar that they put into our life, and it was a form of persecution." Because he did not want to leave while the children were young, however, he waited four years before making his first attempt to leave China. After several unsuccessful attempts, he left China on January 26, 2004, eight years after his wife's sterilization. Kangzhen and the children remained in Fuzhou.

The IJ denied Dong's application, finding that Dong's assertion that he left China because of the sterilization was not credible. An appeal followed, and the BIA remanded the matter to the IJ for further findings as to whether Dong's testimony about the abortion and sterilization procedure was credible. The IJ issued a second order on May 10, 2007 in which he found that none of Dong's testimony was credible, and he again denied the application on that ground. Dong appealed once more, and the BIA affirmed the IJ's decision on July 28, 2008. The Board declined to address the issue of Dong's credibility, finding instead that Dong's testimony, even if true, did not establish his eligibility for asylum, withholding of removal, or protection under the Convention Against Torture. Dong then filed the present petition for review, which is limited to the denial of asylum.

## II.

The Immigration and Nationality Act authorizes the Attorney General, in his discretion, to grant asylum to an alien who qualifies as a "refugee" within the meaning of the Act. See 8 U.S.C. § 1158(b)(1)(A); INS v. Elias-Zacarias, 502 U.S. 478, 481 (1992); Touch v. Holder, 568 F.3d 32, 38 (1st Cir. 2009). The term "refugee" includes any person who is unable or unwilling to return to his country of nationality "because of persecution or a well-founded fear of persecution on account of race, religion, nationality, membership in a particular social group, or political

-5-

opinion." 8 U.S.C. § 1101(a)(42). To be eligible for asylum, an applicant must therefore establish as a threshold matter that he has suffered past persecution on account of one of the five protected grounds, or that he has a well-founded fear of future persecution on account of one of those grounds. See 8 C.F.R. §§ 1208.13(a)-(b), 1208.14(a).

Dong claims that he was and will be persecuted "on account of . . . political opinion," relying on the broadened definition of that phrase set forth in section 601(a) of the Illegal Immigration Reform and Immigrant Responsibility Act of 1996, Pub. L. No. 104-208, 110 Stat. 3009-546. Section 601(a) provides:

> [A] person who has been forced to abort a pregnancy or to undergo involuntary sterilization, or who has been persecuted for failure or refusal to undergo such a procedure or for other resistance to a coercive population control program, shall be deemed to have been persecuted on account of political opinion, and a person who has a well founded fear that he or she will be forced to undergo such a procedure or subject to persecution for such failure, refusal, or resistance shall be deemed to have a well founded fear of persecution on account of political opinion.

8 U.S.C. § 1101(a)(42). Congress enacted section 601(a) "for the express purpose of overturning the BIA's decision in Matter of Chang, 20 I. & N. Dec. 38 (B.I.A. 1989)," which had held that involuntary sterilization pursuant to China's "one child" policy did not constitute persecution on account of a protected ground.

Lin-Zheng v. Att'y Gen., 557 F.3d 147, 151 (3d Cir. 2009) (en banc) (citing H.R. Rep. No. 104-469(I), at 173 (1996)). As the 1996 amendment makes clear, an individual who has been (or will be) subjected to coercive population control procedures is now "deemed" to have been persecuted on account of political opinion, as are individuals who have been (or will be) persecuted for failing or refusing to undergo such a procedure or for resisting a coercive population control program.

The BIA originally interpreted the involuntary abortion/sterilization clause of section 601(a) to extend to both the victims of those measures and their spouses. See Matter of C-Y-Z-, 21 I. & N. Dec. 915, 918 (B.I.A. 1997) (en banc) ("[T]he spouse of a woman who has been forced to undergo an abortion or sterilization procedure can thereby establish past persecution."); see also Matter of S-L-L-, 24 I. & N. Dec. 1, 4 (B.I.A. 2006) (en banc) (reaffirming and clarifying the holding of Matter of C-Y-Z-); Zeng v. Gonzales, 436 F.3d 26, 28 (1st Cir. 2006) (acknowledging the BIA's interpretation). Dong relied on that doctrine -- which we shall refer to as the "spousal bootstrapping rule" -- throughout the proceedings below, arguing before the IJ and the BIA that he was eligible for asylum because of Kangzhen's forced abortion and sterilization.

The legal landscape shifted during the pendency of Dong's second appeal to the BIA, however. Before the briefs were filed,

-7-

the Second Circuit held that the BIA's spousal bootstrapping rule contravened the unambiguous text of section 601(a).[2]  See Lin v. U.S. Dep't of Justice, 494 F.3d 296, 300 (2d Cir. 2007) (en banc). Then, after Dong had submitted his brief to the BIA, the Attorney General issued a decision expressly abrogating the spousal bootstrapping rule.  See Matter of J-S-, 24 I. & N. Dec. 520, 536-37 (A.G. 2008) ("[T]he spouse of the physical victim of [a coercive population control] procedure is not someone who can be considered per se to have faced, or to have a well-founded fear of facing, 'persecution' 'on account of' 'resisting' a coercive population control program . . . based solely on the fact that he or she is married to the victim.") (emphasis in original).  The BIA concluded that Dong's asylum claim was foreclosed by the Attorney General's decision and affirmed the IJ's denial of his application on that basis.

Dong does not challenge the validity or applicability of the Attorney General's decision in the present petition.  Instead, he now claims that his own actions bring him within the "other resistance" clause of section 601(a).  See 8 U.S.C. § 1101(a)(42) (providing that an individual who was persecuted, or has a well-founded fear of being persecuted, for "other resistance to a

---

[2] Two other circuits reached the same conclusion in subsequent cases.  See Yu v. U.S. Att'y Gen., 568 F.3d 1328, 1332-33 (11th Cir. 2009) (per curiam); Lin-Zheng v. Att'y Gen., 557 F.3d 147, 149 (3d Cir. 2009) (en banc).

coercive population control program" shall be "deemed to have a well founded fear of persecution on account of political opinion"). To be eligible for asylum under that provision, an applicant must show that he engaged in resistance to a coercive population control program and that he was persecuted, or has a well-founded fear of being persecuted, for that resistance. See Lin, 494 F.3d at 313; Li v. Ashcroft, 356 F.3d 1153, 1158-60 (9th Cir. 2004) (en banc). According to Dong, the BIA improperly refused to consider whether his flight from China constituted "resistance" within the meaning of section 601(a). He therefore asks us to do one of three things: (1) remand the matter to the BIA with instructions to determine whether his flight renders him eligible for asylum; (2) rule as a matter of law that his flight renders him eligible for asylum; or (3) instruct the BIA to remand the matter to the IJ for further factfinding on the "other resistance" issue.[3]

Dong's first request is foreclosed by the procedural background of his case. His argument suggests that the BIA arbitrarily failed to consider a potentially outcome-determinative argument that was clearly before it. Cf. Cordero-Trejo v. INS, 40 F.3d 482, 492 (1st Cir. 1994) (remanding for further proceedings because, inter alia, the BIA failed to consider the applicant's "pattern or practice" persecution argument); Abdulai v. Ashcroft,

---

[3] Dong's brief is not a model of clarity with respect to the relief requested. For the sake of thoroughness, we consider all of the possibilities suggested by his filings.

239 F.3d 542, 549 (3d Cir. 2001) ("A decisionmaker must actually consider the evidence and argument that a party presents.") (internal quotation marks and citations omitted). It is true that the BIA did not consider whether Dong's flight amounted to "other resistance." However, Dong never presented that argument to the BIA in the first place. As we have indicated, Dong relied almost exclusively on the spousal bootstrapping rule throughout the administrative proceedings. He did not mention "other resistance" at all until his second appeal to the BIA. Even then, he did not argue that he had resisted a coercive population control program by leaving China. Rather, he asked for a remand so that he could attempt to muster unspecified evidence of resistance:

> In the alternative, the case should be remanded to allow the respondent to testify more fully as to the events that occurred when his wife was forcibly aborted and sterilized to see if his actions may have constituted "other resistance" as required by the recent Second Circuit decision in Lin v. U.S. Department of Justice.[4]

Putting to one side the issue of whether the BIA erroneously denied Dong's request for a remand for further factfinding, see infra, we cannot fault the Board for failing to consider an altogether different merits argument that was never urged before it. See Yu

---

[4] Dong apparently meant to invoke the Lin court's observation that the spouse of an individual who has been subjected to coercive population control measures, although not automatically eligible for asylum, might nevertheless be eligible under section 601(a)'s "other resistance" provision. See Lin, 494 F.3d at 313.

-10-

v. Gonzales, 502 F.3d 17, 20 (1st Cir. 2007) (rejecting the applicant's attempt to "change the nature of [her forced abortion] claim by shifting her focus in the appellate tribunals" to her resistance efforts).

Dong's second request -- that we find as a matter of law that his flight renders him eligible for asylum -- fails for similar reasons. We have consistently held that "arguments not raised before the BIA are waived due to a failure to exhaust administrative remedies." See Molina De Massenet v. Gonzales, 485 F.3d 661, 664 (1st Cir. 2007). As we have explained, Dong never argued before the BIA that his flight from China constituted "other resistance to a coercive population control program." His attempt to raise that argument for the first time in this court is therefore unavailing. Id.; see also Olujoke v. Gonzales, 411 F.3d 16, 22-23 (1st Cir. 2005) (rejecting an applicant's attempt to "resurrect" a claim in the court of appeals where the applicant "failed to make any developed argumentation in support of that claim before the BIA").

Finally, to the extent that Dong means to challenge the BIA's refusal to remand for further factfinding, we review that decision for abuse of discretion. Pakasi v. Holder, 577 F.3d 44, 48 (1st Cir. 2009). We may reverse under that deferential standard only if the denial was "made without a rational explanation, inexplicably departed from the established policies, or rested on

an impermissible basis." <u>Id.</u> (internal quotation marks and citations omitted). None of those factors are present here. Dong did not explain to the BIA what additional facts he would have presented if the case had been remanded. Nor did the record before the BIA contain any obvious signs of resistance that could have been explored further. Faced with a record and briefs that failed to show how further factfinding would aid Dong, the BIA properly exercised its discretion in declining to remand. <u>See</u> <u>id.</u> (finding that the BIA did not abuse its discretion in refusing to remand when the applicant failed to present any evidence that would have altered the outcome on remand).

The petition for review is **<u>DENIED</u>**.